(40 South. 597.)

No. 15,953.

## STATE v. NEW ORLEANS RY. & LIGHT CO.

(Feb. 12, 1906.)

1. LICENSES—EXEMPTIONS — ELECTRIC LIGHT COMPANY.

An electric light company is not a "manufacturer" in the sense of the exemption clause of article 229 of the Constitution of 1898 authorizing the Legislature to impose license taxes.

[Ed. Note.—For cases in point, see vol. 32, Cent. Dig. Licenses, §§ 23, 53; vol. 45, Cent. Dig. Taxation, § 384.]

2. SAME—MANUFACTURERS.

Where, under identical provisions in two state Constitutions exempting "manufacturers"

from license taxation, the Legislature has for more than 20 years imposed license taxes on the business of gas, electric, waterworks, telegraph, and telephone companies, such a construction is entitled to great weight.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Constitutional Law, § 15; vol. 44, Cent. Dig. Statutes, § 296.]

3. TAXATION—EXEMPTIONS.

Exemptions from taxation are strictly construed, and doubt is fatal in such cases.

[Ed. Note.—For cases in point, see vol. 45, Cent. Dig. Taxation, §§ 322, 323.]

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; John St. Paul, Judge.

Rule by the tax collector against the New Orleans Railway & Light Company to show cause why it should not pay a license. Rule made absolute, and from judgment in favor of the state, defendant appeals. Affirmed.

Denègre & Blair, for appellant. Edward Rightor, for appellee state tax collector.

LAND, J. Defendant company was ruled by the tax collector to show cause why it should not be condemned to pay a license tax of $1,875, with 2 per cent. per month interest from March 1, 1905, and 10 per cent. attorney's fees, for conducting the business of electric light in the city of New Orleans.

Defendant pleaded for answer that it is exempt from the payment of any license tax as being a "manufacturer" under article 229 of the state Constitution of 1898.

The rule was tried on an agreed statement of facts, and was made absolute as prayed for. Defendant has appealed from the judgment in favor of the state.

It is admitted that, if defendant company is liable at all for the payment of a license tax, the amount sued for is correct.

It is further admitted that defendant employed directly in its electric light plants 90 men, exclusive of solicitors, inspectors, metermen, linemen, bill collectors, office force, storekeepers, etc., and consumes upward of 33,000 tons of coal annually in operating its said plant.

Most of the statement of facts consists of a description by a prominent expert in electricity and electric science of the manner in which the electric light business is conducted. This expert tells us that the burning of coal in a furnace under a boiler produces steam, which through the medium of the engine and other machinery produces the "motion power," used to rotate the armature in a certain relation with the magnetic field; that this rotation of the armature produces currents in the wires which compose the armature; and that these currents are carried along wires to lamps, and there, acting on and through carbon rods, finally produce the well-known electric light.

This expert further says:

"The electricity which furnishes the lights does not exist until the armature revolves. The revolution of the armature brings into being something that did not exist before; that is, this electric energy, or energy in this electric form."

This expert explains in detail the modus by which the light "in the arc" is produced, and says that the operation of a dynamo machine is analogous to that of a pump forcing water through a series of pipes. The expert, in concluding his statement, says that "the energy which becomes light has its origin in the burning of coal under the boiler of the engine," or, in other words, that the electricity which produces the flame in the arc is created by using the latent energy of the coal.

The only question in the case is whether defendant company is a "manufacturer," in the sense of article 229 of the Constitution of 1898, which reads in part as follows:

"Art. 229. The General Assembly may levy a license tax, and in such case shall graduate the amount of such tax to be collected from the persons pursuing the several trades, professions, vacations and callings. All persons, associations of persons and corporations pursuing any trade, profession, business or calling may be rendered liable to such tax, except

clerks, laborers, clergymen, school teachers, those engaged in mechanical, agricultural, horticultural, and mining pursuits, and manufacturers other than those of distilled, alcoholic or malt liquors, tobacco, cigars, and cotton seed oil."

Article 230 of the same Constitution exempted from parochial and municipal taxation for 10 years from the 1st day of January, 1900, the capital, machinery, and other property employed in mining operations and in the manufacture of a large number of enumerated articles. Electric light plants are not included in the list, and therefore are subject to state and municipal property taxation.

The first Legislature which convened after the adoption of the Constitution of 1898 passed a general license tax law, which is still in force. See Act No. 171, p. 387, of 1898. Section 3 of said act imposed a graduated license tax on manufacturers subject to license under article 229 of the Constitution, and section 11 (page 408) for carrying on each business of gaslight, electric light, waterworks, etc. It is to be presumed that section 11 of said act has been enforced from 1898 to the present time and that licenses have been paid in accordance with its provisions.

Article 206 of the Constitution of 1879 and article 229 of the Constitution of 1898 exempt in the same language the same classes of persons · from the payment of license taxes. Yet section 4, p. 144, of Act No. 119 of 1880, imposed a license tax "on each business of gaslight, waterworks, telegraphing," etc., "and all other manufacturing and work done with fixed machinery or steam power and not exempted by the Constitution."

In 1884 a new license statute was enacted and a license tax imposed "on each business of gaslight, electric light, waterworks, telegraphing, including local and district telegraphs, telephone exchange," etc.

Hence for more than 20 years the uniform legislative construction of the same provisions in two state Constitutions has been that the business of gas and electric lighting is not exempt from license taxation.

In 1905, for the first time, this construction was challenged in a court of justice by the claim of exemption set up in defendant's answer in this suit.

In Cooper Manufacturing Company v. Ferguson, 113 U. S. 733, 5 Sup. Ct. 741, 28 L. Ed. 1137, the court said:

"The act was passed by the first Legislature that assembled after the adoption of the Constitution, and has been allowed to remain on the statute book to the present time. It must therefore be considered as a contemporary interpretation, entitled to much weight. Stuart v. Laird, 1 Cranch, 299, 2 L. Ed. 115; Martin v. Hunter, 1 Wheat. 304, 4 L. Ed. 97; Cohens v. Virginia, 6 Wheat. 264, 5 L. Ed. 257; Adams v. Storey, 1 Paine, 79, 90, Fed. Cas. No. 66."

Of course, this doctrine is limited to ambiguous provisions; but, where ambiguity exists, a comtemporaneous legislative exposition "is entitled to great deference, as it may well be supposed to result from the same views of policy and modes of reasoning which prevailed among the framers of the instrument expounded." 6 Am. & Eng. Ency. Law (2d Ed.) p. 931.

In City v. Robira, 42 La. Ann. 1098, 8 South. 402, 11 L. R. A. 141, which was a license tax case in which defendant claimed exemption as a "photographer" under article 206 of the Constitution of 1879, the court said:

"It is to be observed that the act of the Legislature taxes 'photographers' expressly. It must therefore be inferred that the General Assembly did not consider them as coming within the constitutional exemption.

"The acts of a Legislature are to be treated with the greatest respect, as they emanate from a co-ordinate and powerful branch of government. They must be presumed to be constitutional, unless they be shown manifestly to have transgressed or violated the organic law."

The court further said:

"It may be added that it is universally settled that exemption laws, being in derogation of a general rule, must be strictly construed; that whoever claims shelter under them must prove himself clearly entitled to the immunity; and that in such cases doubt is fatal. Plausible hesitation warrants an adverse finding."

It was the obvious purpose of the framers of the Constitutions of 1879 and of 1898 to encourage, by exemption from direct taxation, mining operations and the manufacture of certain articles specifically designated. It is significant that no gas or electric plant or work of public utility of any kind is included in the list. In the articles of the two Constitutions relative to license taxation there is exempted "mining pursuits and manufacturers other than those of distilled, alcoholic or malt liquors, tobacco, cigars and cotton seed oil." The articles thus excepted, as well as those specified in article 230, suggest material things in commerce, susceptible of being given new shapes, new qualities, or new combinations by some process of manufacture. Every decision of this court cited by counsel for defendant relates to articles of commerce either in their raw state or after they had gone through some artificial process, and the question decided has been whether the additional work done on such articles can be classified as a manufacturing industry. This question has proved difficult of satisfactory solution and has led to conflicting decisions.

In the ordinary popular meaning of the word, a corporation which operates gas or electric works is not a "manufacturer," and is not so styled, though, scientifically speaking, gas or electricity may be a product of manufacture.

In the instant case the popular meaning of the term "manufacturer" is reinforced by long legislative action and by long acquiescence therein by the persons and corporations affected.

Counsel for defendant company, in their very able and ingenious brief, say:

"A number of cases have passed upon the question of whether an electric light company was or was not a manufacturer. Some decisions have been adverse, but the greater number have been in our favor."

In other words it is a debatable question whether an electric light company is a manufacturer. Conceding, for the sake of the argument, that defendant company does manufacture electricity and light, the next question for solution is whether a producer of that kind of energy is a "manufacturer" in the sense of article 229 of the Constitution. In the legislative history of Louisiana the term "manufacturer" has never been applied to a gas, water, or electric corporation. Section 683 of the Revised Statutes of 1870 speaks of "manufactures" of cotton, woolen, linen, silk, hempen cloth, and cordage, and of the "manufacture" of iron and other metals and things. It authorized the formation of corporations for the purpose of manufacture and for many other purposes, including the construction and operation of works to supply cities and towns with gas or water. As amended and re-enacted by Act No. 154, p. 288, of 1902, the word "manufacture" is used in the same restricted sense, and is not applied to works of public utility to supply cities and towns with water, electricity, gas, or fuel oil. There is no reason of public policy for exempting light companies from taxation and at the same time denying exemption to other corporations exercising similar franchises in the interest of the public.

In Commonwealth of Pennsylvania v. Northern Electric Light & Power Company, 22 Atl. 839, 14 L. R. A. 107, the Supreme Court of the state held that, while the defendant company might technically be considered a manufacturer of electricity and light, it was not a "manufacturing corporation" in the sense of a statute exempting the stock of such corporations from taxation.

Defendant's claim of exemption is at least doubtful, and therefore cannot be allowed.

Judgment affirmed.