## BETA XI CHAPTER OF BETA THETA PI v. CITY OF NEW ORLEANS ET AL.

---

(October 19, 1931. Opinion and Decree.)
(November 16, 1931. Rehearing Refused.)
(January 1, 1932. Writ of Certiorari and Review Refused by Supreme Court.)

---

St. Clair Adams, Sumter D. Marks, Jr., Delvaille H. Theard, H. G. McMahon, John R. Perez, A. A. de la Houssaye and Spencer, Gidiere, Phelps & Dunbar, of New Orleans, attorneys for plaintiff, appellant.

Michel Provosty, Henry B. Curtis, William C. Dufour and Rene A. Viosca, of New Orleans, attorneys for defendant, appellee.

JANVIER, J. Beta Xi chapter of Beta Theta Pi Fraternity seeks to exempt from state, parochial, and city taxation for the year 1928 the chapter house owned and used by it near the campus of Tulane University in New Orleans. The claim for exemption is based on section 4 of article 10 of the Constitution of the state of Louisiana for the year 1921, which section reads as follows:

"The following property, and no other, shall be exempt from taxation:

"All public property.

"Places of religious worship; rectories and parsonages belonging to religious denominations, and used as places of residence for ministers; places of burial; property devoted to charitable undertakings, including that of such organizations as lodges and clubs organized for charitable and fraternal purposes and practicing the same; schools and colleges; but the exemption shall extend only to property, and grounds thereunto appurtenant, used for the above mentioned purposes, and not leased for profit or income."

The Beta Xi chapter of the fraternity is incorporated; it owns the property in question, and it is conceded that, in good faith and not for the purpose of evading taxation, it adopted on December 22, 1927, a charter amendment, showing that, among the objects and purposes for which it was incorporated, were the following:

"* * * The aid and assistance of students of Tulane University, whether members of the Beta Theta Pi Fraternity or not, by the establishment of a Students' Loan Fund from which loans, without interest, may be made to deserving students, who are unable to meet the necessary expenses of their college education; the relief of the poor and needy generally, by the distribution of funds and supplies at Christmas time, and on other appropriate occasions."

The district court rendered judgment dismissing the suit, and the fraternity has appealed.

The evidence, there being no conflict therein, shows that, in addition to the usual fraternal functions performed by most Greek letter college fraternities, this particular organization has in the past several years, in accordance with the charter provisions referred to, performed altruistic services of benefit not only to its own members, but to others, and it is thus claimed that it is entitled to the exemption made available by the Constitution to those organizations created for fraternal and charitable purposes and practicing the same.

We are confronted by a disagreement of counsel as to the scope of the particular exemption referred to. Attorneys representing plaintiff suggest that it is contemplated that there shall be exempt all property owned and used for fraternal and charitable purposes, whereas those who

champion the rights of the taxing authorities maintain that it is only property devoted to charitable undertakings which the lawmakers intended to relieve from the burdens of taxation, and that the language of the article not only can be so interpreted, but, in fact, admits of no other construction.

Opposing counsel agree that tax exemptions are not favored in the law and that, where language used by lawmakers admits of two interpretations, that one should be accepted which does not grant the exemption contended for.

"Exemptions from taxation are strictly construed, and those claiming the benefit of such exemptions must bring themselves clearly within the provisions of the law by which they are created." Penick & Ford v. Ehret, 166 La. 1, 116 So. 572, 574.

"Exemptions from taxation are not favored. The theory of the law is that all property shall pay its just portion of the public burdens, and it is only in those cases where the property is put to some use calculated to minimize the expenses of government that public policy justifies an exemption." People ex rel. Medical Society of Kings County v. Neff, 34 App. Div. 83, 53 N. Y. S. 1077, 1079.

Bearing in mind, then, the rule that exemption enactments should be interpreted and construed strictly against those who claim the exemption, let us analyze the constitutional article which is here involved.

It is immediately noted that six specific classes of property are exempted, as follows:

First. All public property.

Second. Places of religious worship.

Third. Rectories and parsonages belonging to religious denominations, and used as places of residence for ministers.

Fourth. Places of burial.

Fifth. Property devoted to charitable undertakings, including that of such organizations as lodges and clubs organized for charitable and fraternal purposes, and practicing the same.

Sixth. Schools and colleges.

After the words "All public property," there appears a period. After each of the other specific exemption clauses, there appears a semicolon. In the fifth class, after the word "undertakings," appears a comma. It therefore appears to us from the punctuation that the lawmakers intended to say, and, in fact, did say, that in order that property other than that mentioned in the other classes should be exempt from taxation, it must be devoted to charitable undertakings. But it went further and said in effect that if the property be devoted to charitable undertakings it is exempt, even though it be owned by an organization not devoted exclusively to charity, but which includes in its object fraternal purposes.

We are well aware of the fact that it is not the function of the courts to look beyond the language of a statute to ascertain its meaning, unless that language is ambiguous, or leads to an absurd conclusion. As was said in United States v. Missouri Pacific R. Co., 278 U. S. 269, 49 S. Ct. 133, 136, 73 L. Ed. 322, "construction may not be substituted for legislation." Here, however, we find no need to look beyond the letter of the law. We find that no absurd conclusion necessarily follows the reading thereof, as defendants contend for, but that, on the contrary, the meaning which we are urged to accept by plaintiff could have been better and more clearly expressed by the use of other words and

phrases than those employed by the lawmaker. For instance, what would have been simpler, had the framers of the Constitution so intended, than for them to have used the following language:

"Property devoted to charitable undertakings; property of such organizations as lodges and clubs, organized for charitable and fraternal purposes and practicing the same."

Had such simple language been used, the meaning would not have been in the slightest degree ambiguous.

Furthermore, we particularly notice the use of the word "that" immediately following the word "including." "That" refers back to the word "property" in the preceding clause. The word "property" in the preceding clause is modified by the phrase "devoted to charitable undertakings." If we substitute for the word "that" the other words for which it is used we find that the whole exemption will read as follows:

"All property devoted to charitable undertakings, including property devoted to charitable undertakings of such organizations as lodges and clubs organized for charitable and fraternal purposes and practicing the same."

We, therefore, believe that it is not all property of charitable and fraternal organizations which is exempt, but only such of their property as is devoted to charitable undertakings.

We approach the next question with considerable hesitation because we fear that we can find no definite rule by which we can determine just how much and just what kind of charity must be undertaken in order to entitle the claimant to exemption. Manifestly one can do charity only according to the resources at his command. It cannot be said that the amount expended shall determine the question, nor can the solution come from an ascertainment of the extent of the benefits received by those upon whom they are conferred.

That this fraternity is fulfilling to the extent of its ability its altruistic objects is and must be admitted, and, yet, a careful reading of the record leaves in our minds no doubt that the charitable features undertaken by the organization are, by comparison with its other undertakings and accomplishments, more or less insignificant. With the sincere hope that a recounting of the charitable accomplishments of the organization will not be understood as an attempt on our part to disparage its efforts, we set them forth as they appear in the record, as follows:

First. A loan of $35 made to a member without the exaction of interest.

Second. Another loan in process to another member to enable him to pay his initiation fees. (We do not see any reference to this second loan in the record, but it was conceded in oral argument that it was in process of completion, or had been completed.)

Third. The furnishing each year to poor and needy families of about ten Christmas baskets, costing approximately $5 each.

Fourth. The providing of rooms in the chapter house in which members may live while at college at a price possibly slightly below what they would be required to pay elsewhere.

Charity is a very broad term. In one sense a person does charity who speaks a kind word to another. One who assists the poor and the needy by the donating of

food and clothing is unquestionably doing charity. The problem which confronts us is not are such acts charitable, but are they such as were within the contemplation of the lawmakers when they used the words "charitable undertakings." In almost all cases in which there were under consideration exemptions claimed by organizations doing similar work it has been held that in the contemplation of the lawmakers the word "charity" was intended to include only such works as tended to relieve the public authorities to some extent from the burden of taking care of and providing for the poor, the sick and the needy.

Only on the theory that the charitable acts alleviate the burdens of government can exemptions of property devoted to charitable purposes be justified. As typical examples of language used in similar cases, we cite the following:

"Exemptions from the burdens of taxation, which the great masses of the people are called upon to sustain, as a requisite of civil government, are only favored in legislation, upon the theory that the concession is due as quid pro quo for the performance of a service essentially public, and which the state thereby is relieved pro tanto from the necessity of performing, such as works of charity and education freely and charitably bestowed, as evidenced by the legislation under consideration. Without that concurring prerequisite, an exemption becomes essentially a gift of public funds, at the expense of the taxpayer, and indefensible both under our public policy of equal taxation, and our constitutional safeguard against illegal taxation." Carteret Academy v. State Board of Taxes and Assessments, 102 N. J. Law, 525, 133 A. 886, 887, affirmed 104 N. J. Law, 165, 138 A. 919.

"The reason for exempting certain property from public taxes arises from the fact that such property, in its use for charitable purposes, tends to lessen the burdens of government and to affect the general welfare of the public. It is not urged that a college fraternity is a public charity, but the contention is that it is a beneficent and charitable organization. We are of the opinion, however, that the beneficent and charitable organizations contemplated in the Revenue Act are those which tend, in their operation, to lessen the burdens of government. While the appellant exercises a good influence on the student body and relieves the university by providing rooming facilities for men, we are of the opinion that its property does not come within the provisions and intent of the Revenue Act herein referred to." People ex rel. Carr v. Alpha Pi, 326 Ill. 573, 158 N. E. 213, 215, 54 A. L. R. 1376.

It is argued that we are not authorized to delve into the intention of the lawmakers with reference to the meaning to be given to the word "charity." It is said that if there is no ambiguity in the enactment we are not privileged to interpret the language thereof nor to place thereon any other construction than that which flows from the common meaning of the words used; that the term "charity" includes all voluntary acts by which others are benefited, and that if we give to it this meaning the altruistic acts of plaintiff must be included. It is true that where statutes are clear and unambiguous no interpretation thereof may be attempted by the courts. The letter may not be abandoned in an effort to pursue the spirit. But if, as a consequence of following the letter of the law, an absurd result is reached, then it is the duty of courts to seek out the motive which prompted the enactment. In Church of the Holy Trinity v. U. S., 143 U. S. 472, 12 S. Ct. 511, 512, 36 L. Ed. 226, the Supreme Court of the United States said:

"All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to

injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language which would avoid results of this character. The reason of the law in such cases should prevail over its letter."

In fact, the Louisiana Civil Code provides, in article 18, that:

"The universal and most effectual way of discovering the true meaning of a law, when its expressions are dubious, is by considering the reason and spirit of it, or the cause which induced the Legislature to enact it."

Were the view of counsel for plaintiff to prevail it might in other cases lead to the absurd result that clubs and other private organizations, by undertaking moderate charitable programs costing them possibly only a hundred dollars or so, might relieve themselves from the payment of taxes involving the expenditure of many times as much. It is conceded that in the instant case plaintiff was in perfect good faith and has devoted itself to the undertakings mentioned without any thought of adopting them into its program for the purpose of obtaining tax exemption, but if it is to be exempted, nothing would prevent any similar organization, or any other organization of private persons organized for their own selfish purposes, from undertaking such moderate charitable works and from receiving the benefits of tax exemption which would necessarily follow.

But, even if it be conceded that the plaintiffs are engaged in charitable undertakings within the contemplation of the constitutional article, it does not necessarily follow that the exemption must be granted, for it (the exemption) results, not from the character of the property owner, but solely from the use to which the property is put. The exemption is granted not to fraternal and charitable organizations, but to "property devoted to charitable undertakings," and we cannot accept the view that the property in this case is so devoted.

If the fraternity owned its chapter house and also another building, and if it operated the other building as a rooming house for the poor, or as a nutrition center for the needy, or for the sick, then the exemption would be applicable to the other building because that building, owned by a fraternal and charitable organization, could well be said to be devoted to charitable undertakings. But the fact that from the chapter house might emanate the plans and rules for the operation of the other buildings would not, in our judgment, give to the chapter house character as property devoted to a charitable undertaking.

As we have said, we find ourselves unable to state any fixed rule by which it may be determined when property is so devoted as to entitle it to the exemption claimed. As was said in People ex rel. Carr v. Alpha Pi, supra:

"In determining whether property is exempt from taxation, the statute providing for exemptions is to be construed strictly, and doubtful considerations are to be resolved against the exemptions. Whether property is to be exempt depends upon the facts pertaining to its use, as shown in each individual case, and the burden is on the party claiming the exemption provided by the statute."

We are of the opinion that however the property may be owned, whether by an individual, or by a charitable organization, or by one both charitable and fraternal, the character of work undertaken must include, in a substantial way and as one of the principal objects of the organiza-

tion, the doing of such work as relieves the commonwealth of some of its burdens; and that the property itself, and not only the organization, must be devoted to such undertakings.

That other organizations, whose objects may or may not be entirely charitable, have been granted exemption by taxing authorities under this or similar statutes, cannot be taken into consideration because, in the absence of ambiguity, we are not permitted to apply the doctrine of contemporary construction. Because one property owner has been granted an exemption not actually due does not give to all others of similar character the right to claim exemption.

The college fraternity, as it is conducted today and as the record discloses, is an influence for exceeding good in college circles and in surrounding communities. The charitable works undertaken by this and other similar organizations are praiseworthy in the extreme. We are in thorough accord with the expressions used in People ex rel. Carr v. Alpha Pi, supra, in which the court said:

"Appellant's property is not held, and the chapter is not operated, for pecuniary profit. The influence of appellant on those affected thereby is of wholesome benefit to them. That the purposes of such organizations in university life under proper direction assist their membership in establishing themselves in life and to come under the influence of education cannot be doubted. The practice of appellant of extending credit to those unable to otherwise complete their college courses is of a highly commendable character. These facts, however, do not constitute the appellant an institution of public charity nor a beneficent and charitable organization."

For the reasons given the judgment appealed from is affirmed and plaintiff's suit is dismissed at its cost.