190 So. 313

**MATTINGLY v. VIAL, Sheriff.**

No. 35242.

June 26, 1939.

2

John E. Fleury, of Gretna, for appellant.

F. A. Middleton, of New Orleans, for appellee.

HIGGINS, Justice.

On December 13, 1938, the plaintiff applied for a writ of injunction to restrain the defendant, the Sheriff and Ex-officio Tax Collector of the Parish of St. Charles, from selling his tract of land containing approximately 495.99 acres and certain movable property for the payment of the 1937 ad valorem taxes, on the ground that this real and movable property was exempt from taxation by virtue of a contract entered into between the plaintiff and the State of Louisiana, through the governor, in accordance with the authority of Paragraph 10 of Section 4 of Article X of the Constitution of Louisiana, as amended by Act 68 of the Regular Session of 1936, which was ratified by the electors of the State on November 3, 1936; and prayed that the property assessed be declared not subject to taxes for the period of December 1, 1937 to December 1, 1947, inclusive, and that the assessment against the property for the year 1937 be cancelled.

The defendant answered the petition, denying that the plaintiff was entitled to the claimed tax exemption and averred that the laws granting tax exemptions were strictly construed and that it was never intended or contemplated that the governor should have the power to exempt land previously subject to taxation from taxes where bonds had been issued by the Parish or any other parochial subdivision of the Parish or State, and which bonds were still outstanding and unpaid, as this would be impairing the obligation of the contract made with the holders of the outstanding bonds and would also impose a greater tax burden on the remaining property owners who were subject to taxation for the payment of these bonds.

After the trial on the merits, the district judge rendered judgment on January 12, 1939, in favor of the plaintiff, granting the relief prayed for. The defendant appealed.

On December 1, 1937, the Honorable Richard W. Leche, Governor of the State of Louisiana, in the name of the State and acting under the authority of Paragraph 10 of Section 4 of Article X of the Constitution of the State of Louisiana, as amended by Act No. 68 of the Regular Session of 1936, ratified by the electors of the State of Louisiana on November 3, 1936, granted to Dr. C. Walter Mattingly, plaintiff herein, a full exemption from all ad valorem taxes which might be assessed against the industry owned by him for a period of ten calendar years succeeding the date of the grant. The grant was made in consideration of the construction and operation of "a new industrial plant" by plaintiff at an estimated cost of $25,000 for the manufacture of dairy products in the Par-

ish of St. Charles. The site of the dairy was owned by plaintiff and taxes regularly paid thereon by him, prior to the grant of exemption and to the erection of the plant.

The assessor of the Parish of St. Charles, for the year 1937, assessed the real estate on which the industrial plant is located at $7,000, the merchandise, consisting of milk bottles, bottle caps, cheese moulds and milk cases at $200, and, pursuant to the exemption, did not assess the dairy plant.

Counsel have agreed that the merchandise involved is not presently in use but is being held for use in the future operation of the industrial plant, and further agreed that the industrial plant is now in operation and that the buildings and equipment therein are not assessed.

The Constitution, as amended by the constitutional provision embodied in Act No. 68 of 1936, Article X, Section 4, Paragraph 10, reads: "The Governor, or the State Board of Commerce and Industry (if that Board is created by law), with the approval of the Governor, may contract with the *owners of any new industry to be established in the State, or an addition or additions to any industry or industries already existing in the State, for the exemption from taxation of any such new industry or any addition to any such existing industry,* upon such terms and conditions as the Governor, or said board with the approval of the Governor, may deem to the best interests of the State; * * *." (Italics ours.)

On December 1, 1937, Governor Leche acting under the authority granted by this provision of the Constitution, entered into a contract with Dr. C. Walter Mattingly, the owner of the "Rex Jersey Farms". (which represents an investment of $25,000 and employs 28 persons) and in which contract it was agreed that: "From the date hereof and for the period of ten (10) calendar years, succeeding the date of this contract, the State of Louisiana does, by these presents, give and grant unto the party of the second part full and complete exemption from all ad valorem taxes, including, without limiting the generality hereof, State, Parish, municipal, district and special taxes, which might or could be assessed against the property so owned by the party of the second part, as above described, and all property, real, personal or mixed, belonging to the party of the second part and used in connection with the property described in Article 1 hereof situate thereon during the period of this contract."

The question presented on this appeal is the legality of the two tax assessments,— the assessment of the real estate on which the industrial plant is situated and the assessment of articles of merchandise on the property and held for future use in the operation of the plant.

Article X, Section 4, Paragraph 10 of the Constitution of Louisiana, as amended by Act No. 68 of 1936, the authority under which the contract of exemption was executed, authorizes: " * * * the exemption from taxation of any *such new industry* or *any addition to any such existing industry,* upon such items and conditions as the Governor * * * may deem to the best

interests of the State; * * *." (Italics ours.)

The contract of exemption, of course, can grant no greater exemption than that authorized by the Constitution, and the exemption sought must not only be within the terms of the contract, but within the scope of the constitutional authorization. The contract declares that the plaintiff has erected an industrial plant; that the plant is located on certain described real estate; that " * * * the exemption herein granted shall extend to the total cost of said industrial plant * * *;" that "the exemption shall extend to * * * the property so owned by the party of the second part, as above described, and all property, real, personal, or mixed, belonging to the party of the second part and used in connection with the property described in Article 1 hereof situate thereon during the period of this contract."

There is no principle of interpretation more firmly and uniformly established by the jurisprudence of this and the other States than the unbroken rule that exemptions from taxation are to be strictly construed against the person claiming the exemption, and that any plausible doubt is fatal. 2 Cooley on Taxation, 4th Ed., § 672; and Judson on Taxation, 2d Ed., § 93.

The decisions of the courts of this State are in accord that if any interpretation can be made of the allegedly exempting authority which will deny the exemption, that interpretation will be followed. City of New Orleans v. Heymann, 182 La. 738, 162 So. 582; Beta XI Chapter of Beta Theta Pi v. City of New Orleans et al., 18 La.App. 130, 137 So. 204; Penick & Ford v. Ehret, 166 La. 1, 116 So. 572; Pearce et al. v. Couvillon, 164 La. 155, 113 So. 801; State v. New Orleans R. & Light Co., 116 La. 144, 40 So. 597, 7 Ann.Cas. 724; State v. American Sugar-Refining Company, 51 La.Ann. 562, 25 So. 447; and Brooklyn Cooperage Co. v. City of New Orleans et al., 47 La.Ann. 1314, 17 So. 804.

The constitutional provision permits exemption of a "new industry" as an inducement and encouragement to new business and to construction, to be made on terms "to the best interests of the State." It is intended to aid the industry in establishing itself by not augmenting the costs of building and equipment by taxing the building and the equipment. The intent of the exemption cannot be to reduce the tax income of the State, but is to forego future taxes that would have otherwise accrued from the new or additional industry so exempted. The purpose of the law was to foster employment of residents of the State and the use of Louisiana materials and eventually, after the exemption period, to increase the tax revenue.

It should be borne in mind that the exemption is of a *new* industry and *new* additions to established industries. The very tenor of the exemption shows that it is to apply only to the new, the future industry, buildings and equipment. There is nothing in the exemption provision to indicate that the framers of the constitutional provision intended that it should affect the existing status of property. The provision

in effect says to the industrialist—Build and operate your business, and we shall not tax you any more because of your construction, new ownership or additions than you now pay. We lose nothing by doing so, and you and our citizens are benefited.

■■ To so interpret the constitutional provision that property from which the State is and has been deriving revenue for years is taken from the rolls is to defeat one of the very purposes of the exemption. Where another logical interpretation is possible which will not so drastically reduce tax revenues and which will restrict the exemption to no more than could possibly be intended by the Constitution, we are obliged to follow it.

Furthermore, another vital interest affected by the interpretation asked by plaintiff is that of holders of outstanding bonds of the levee districts, parishes, and other political subdivisions of the State. It is admitted that there are outstanding and unpaid bonds of St. Charles Gravity Drainage District No. 1, for the payment of which a tax of 50 cents per acre per year is levied. These bonds were issued and sold to the public, who bought them on the faith of a 50 cent per acre tax on the amount of the assessment on the tax rolls in that District, which included the 495.99 acres sought to be exempted. In other words, if this exemption is granted, a yearly amount of $251 will be removed, by this single exemption, from the annual income of this District alone, which taxes have been irrevocably dedicated to the payment of the District's bonds and on the faith of which these bonds were sold. The

credit of the political subdivision will be seriously impaired, with revenues for bond payment and payment of operating expenses, on which they have relied for years, thus taken from them. In an industrial community, developed over a short period of time, it is highly probable that such a gift of tax revenues would bankrupt the local government.

If bonds and operating costs of government are to be paid, and they must be paid if in any way possible, the revenues thus donated must be compensated by additional tax burdens on the remaining and unfavored taxpayers. Their rate of taxation must increase and they must pay the price of the State's generosity.

■ We must consider the constitutional provision for exemption of "an addition or additions to any industry." If the dairy operator here involved purchased an additional 500 acre tract contiguous to his present tract, could it be maintained that this tract was an "addition" to the industry, and thus exempted? Would it not be highly advantageous to the claimant, and ruinous to the political subdivision to erect a milking shed on that contiguous tract? Certainly this action would not entitle him to the exemption sought. An "addition" to industry obviously means an addition of buildings, factories, machinery, equipment and the like. So clearly, the "industry" here comprises only the buildings, machinery and equipment.

■ In view of the public policy involved, the language and intent of the constitutional provision and the application of the rigid rule of strict construction

of the exemption against the claimant, we conclude that the district judge erred in holding exempt the 495.99 acre tract of land owned by plaintiff prior to the beginning of the operation of the industry.

Plaintiff also seeks to have declared exempt articles of merchandise stored on the premises, not in use, but held for future use in the operation of the plant. To do so he must assert and show that these articles of merchandise are part of the "industry." It must be borne in mind that the articles of merchandise listed are transient in nature and changed regularly.

We have been referred to the opinion of the former Attorney General of this State, introduced in this proceeding, in which he ruled on the question now before us:

"Exemptions are strictly construed. Therefore, only that property which was concretely described or located upon the real estate at the moment the exemption was granted—building, equipment, and machinery, or such replacements as were necessitated by wear and tear or improved methods—could be included in that exemption and not property such as merchandise which is in the process of continual movement, that is, entering the plant as raw material and being shipped therefrom as a manufactured product. To hold otherwise would permit a corporation of long standing, by merely putting an addition to its old building, to store all of its raw materials and manufactured products in the new structure and thereby evade taxation. Such was not the purpose of the exemption. *The exemption was merely intended to aid the corporation in becoming established so as not to add to the expense of building and equipment by placing a tax on the building and equipment.*" (Italics ours.)

Similar claims were denied in two decisions of the Mississippi Supreme Court in cases indistinguishable in principle from the present question.

In Board of Sup'rs of Bolivar County v. Merck & Alston, 1929, 153 Miss. 346, 120 So. 839, the Court considered the assessment of hotel furniture, fixtures and equipment where by statute "all permanent hotels, and all permanent additions to existing hotels * * * shall be exempt * *." In 153 Miss. 346, 120 So. at page 840 the Court, in denying the exemption, said: "* * * There is no more reason why the furnishings should be held to be a part of a 'permanent hotel constructed' than there would be in holding that additional furnishings were 'permanent additions constructed' to existing hotels."

In Adams County v. National Box Co., 1921, 125 Miss. 598, 88 So. 168, 169, there was involved the interpretation of a Mississippi statute exempting from taxation "all permanent factories or plants of the kind hereinafter named." In holding that lumber, manufactured products and raw materials and supplies to be used for manufacturing purposes should be assessed, the Court stated, 125 Miss. 598, 88 So. at page 169:

"* * * Exemption statutes are to be strictly construed against exemptions to persons or corporations for gain; and it seems clear to us the act here involved does

not grant exemption to the box company on its raw materials and finished products, but goes only to the manufacturing plant and the things necessarily used in its operation. The personal property here assessed was no essential part of the plant, and is therefore subject to taxation.

\* \* \* \* \* \*

"Those things or equipments of the plant which are exempt from taxation must be used directly in the manufacturing operations of the factory; otherwise they are not exempt."

 It is clear that industries and manufacturers are not exempt from excise and franchise taxes. The fact that taxes must be paid on the business of the industry shows that the exemption extends only to the building, machinery, equipment and other stable and permanent or, at least, not temporary and transient parts of the factory and tools of operation and does not extend to everything however remotely related to the industry.

As the former Attorney General indicated, to allow the exemptions here claimed is to create a device by which ruinous tax evasion, in the guise of legitimate exemptions, will thrive. The purpose of the constitutional provision, and the manifest intendment of its framers, do not accord with the exemptions sought. Property in the process of continual movement is not included in the exemptions.

It is our opinion that the exemptions, under either the constitutional provision or the contract of exemption, included only the building, machinery, equipment or apparatus and permanent fixtures and tools of

the industry, and do not include the real estate previously assessed nor the transitory articles of merchandise temporarily on the premises.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment of the district court is annulled and set aside and it is now ordered that the plaintiff's suit be dismissed at his costs.