CHASEZ, Judge.
Chapman H. Hyams, III died at his domicile in the City of New Orleans on the 12th day of September, 1964. He left a last will and testament, under the terms of which he made a bequest to the Times-Picayune Publishing Company Profit-Sharing Retirement Trust. This legacy constituted 5/24ths of his residuary estate.
The testamentary executor of this estate filed a rule against the Inheritance Tax Collector for the. Parish of Orleans, directing him to show cause why this legacy should not be adjudged to be exempt from the payment of Louisiana Inheritance Taxes and Estate Transfer Taxes on the grounds that it was a legacy to a charitable institution, located within the State of Louisiana.
After trial, the Court rendered judgment on August 31, 1966 against the Inheritance Tax Collector for the Parish of Orleans, decreeing that the testamentary executor of this estate was entitled to the relief prayed for, and. made the rule absolute; accordingly, decedent’s bequest of the 5/24ths interest of his residuary estate to the Times-Picayune Publishing Company Profit-Sharing Retirement Trust was adjudged exempt from all Louisiana Inheritance and Estate Transfer Taxes as a legacy to a charitable institution. From this judgment, the Inheritance Tax Collector for the Parish of Orleans, State of Louisiana, has suspensively appealed.
*30 This matter was submitted to the Court a quo on the following stipulation of facts:
“Mr. Chapman H. Hyams, the third, . a life-time resident of the City of New Orleans,, died on September 12, 1964. Subsequent to his demise a will was located which will has been duly admitted to probate and registered in the proceeding entitled, Succession of Chapman H. Hyams, 3rd, Docket No. 427-211, Civil District Court, Parish of Orleans, State of Louisiana. In such will Mr. Hyams bequeathed to the Times-Picayune Profit-Sharing Trust, as a residuary legatee, 5/24ths of his residuary estate. The Times-Picayune Profit-Sharing Trust was duly created in 1955 and became effective January 1, 1956, and subsequent to such creation received the approval of the Internal Revenue Service as a qualified profit sharing trust exempt from income taxes under the 1954 Internal Revenue Code. To this day the Profit-Sharing Trust continues to enjoy the tax exemption benefits of the Internal Revenue Code and is exempt from Louisiana State income taxes under applicable provisions of the applicable (sic) Louisiana Revised Statutes. As of the present date 631 employees of the Times-Picayune Publishing Corporation are participating in such Trust, and 81 retired employees are presently receiving a monthly annuity purchased with the funds from the Trust. The Times-Picayune Publishing Corporation presently employs 1,035 persons, and those of its employees who are not presently participating in the Trust are eligible on meeting certain terms and conditions as set forth in such Trust. The provisions of the Plan which form part of, and govern the administration of, the Trust provide for disability and welfare benefits to the participants and their widows and children, and no part of the fund or property of such Trust is owned by the Times-Picayune Publishing Corporation. Additionally, retirement benefits are available to those participants of retirement age. All contributions to the Trust have been and are made by the Times-Picayune Publishing Corporation. No contributions are made by the employees. At the time of Mr. Hyams’ death he was a Vice-President of the Times-Picayune Publishing Corporation and a member of the Advisory Group' which participates in the affairs of the Trust. However, at the time of his death Mr. Hyams was only an employee and owned no stock whatsoever in the Times-Picayune Publishing Corporation.”
After this stipulation was read to the Court, the following responses were made by counsel to direct questions propounded by the Judge:
“BY THE COURT: Let me ask you this. It pays pensions to retired employees ?
BY MR. KEARNEY: Yes, sir.
BY THE COURT: And what other payments does it make ?
BY MR. KEARNEY: Disability benefits.
BY THE COURT: And nothing else, pension and disability benefits ?
BY MR. KEARNEY: And death benefits.
BY THE COURT: And death benefits?
BY MR. KEARNEY: Yes, sir.
BY THE COURT: The Profit Sharing title is misleading. It sounds like all employees get a cut out of the profits of the corporation.
BY MR. KEARNEY: No, sir. It’s a retirement plan on a profit sharing, but it really is a pension and death benefit for the employees to which they do not contribute, and which comes out of the profits of the corporation.
BY MR. PHELPS: Excuse me, Bill. This is one of the plans that was set forth in the 1954 Internal Revenue Code *31 that I’m sure Your Honor is familiar with. You have to qualify with the Federal Government before you can take advantage of the section of Code. Profit sharing means that the contributions that go to the fund come from profits of the corporation.
BY THE COURT: I see. All right, I see.
BY MR. KEARNEY: Now, if Your Honor pleases, the sole and only issue presented is whether under the provisions of the Revised Statutes 47:2402 the testamentary disposition to the Times-Picayune Publishing Profit Sharing Plan made by Mr. Hyams is exempt from Louisiana inheritance and estate taxes. I would also like to also (sic) stipulate for the record that if this bequest was held to be non-exempt the amount of tax due would be $26,751.26. There is no Louisiana estate transfer tax due.”
Therefore the sole and only issue posed to this Court for adjudication is whether under the provisions of the Revised Statutes of Louisiana, particularly R.S. 47:2402, the testamentary disposition to the Times-Picayune Publishing Company Profit-Sharing Trust made by decedent is exempt from the payment of Louisiana inheritance and estate taxes.
At the outset it would be well to state that the Times-Picayune Publishing Company Profit-Sharing Retirement Trust is a trust organized under the laws of Louisiana, in conformity with the applicable provisions of the Federal Internal Revenue Code of 1954, which provides tax benefits on the formation of an employer trust in favor of employees. The plan adopted by this Corporation conforms with the requirements of Section 401 (a) of the Internal Revenue Code and became effective as of January 1, 1956. This was accomplished as a result of the desire of the Times-Picayune Publishing Company to inaugurate a pension or employees profit sharing retirement plan to provide certain future benefits to its present and future full-time employees who remained or would remain with the Company during a considerable portion of their productive years. In order to facilitate the execútion of the plan, a trust fund was created by the Times-Picayune Publishing Company, the purpose of which, through the deposit of money annually by the Times-Picayune Publishing Company, was to provide retirement benefits for those of its regular employees who qualified under the plan by reason of eligibility and length .of service with the Company, and thus assure to themselves an income in the years after they ceased active work.. The amount of these benefits are dependent, directly upon the profits of the Company, so as to provide a direct incentive to every eligible employee to contribute to the efficient operation of the Company.
The State of Louisiana also authorizes the creation of an employer-employee trust. Louisiana Revised Statutes 9:1921 provides:
“An employer may create a trust for the benefit of employees whether or not the beneficiaries are in being and ascertainable at the time of its creation. Several settlors may join in one trust for the benefit of their respective employees.”
The law of Louisiana applicable to tax exemptions is set forth in Louisiana Revised Statutes 47:2402:
“The following shall be exempt from the tax imposed in this Part:
(1) Inheritances, legacies and donations and gifts made in contemplation of death, to a direct descendant by blood or affinity, ascendant or surviving spouse of decedent, to the amount or value of five thousand dollars.
(2) Inheritances, legacies and donations and gifts made in contemplation of death to a collateral relation of decedent, (including brothers or sisters by affinity) to the amount or value of one thousand dollars.
*32 (3) Legacies and donations, and gifts made in contemplation of death, to a stranger, to the amount or value of five hundred dollars.
(4) All legacies and donations to charitable, religious or educational institutions located within the State of Louisiana.”
Thus it will be observed that while the State of Louisiana provides for an employer-employee trust, under the law of the State, such trusts, when formed, must necessarily be charitable trusts in order to be exempt from the payment of inheritance and estate taxes.
What therefore is contemplated in Louisiana as a charitable undertaking? All statutes of this state exempting individuals, corporations or other entities from the payment of taxes are strictly construed and those claiming the benefit of such exemptions must fall clearly within the provisions of the law by which they are created. In 1931, the Court of Appeal for the Parish of Orleans, the predecessor of this Court, in the case of Beta XI Chapter of Beta Theta Pi v. City of New Orleans, 18 La. App. 130, 137 So. 204, with Judge Janvier as the Organ of the Court, held:
“ ‘Exemptions from taxation are strictly construed, and those claiming the benefit of such exemptions must bring themselves clearly within the provisions of the law by which they are created.’ Penick & Ford v. Ehret, 166 La. 1, 116 So. 572, 574.”
“ ‘Exemptions from taxation are not favored. The theory of the law is that all property shall pay its just portion of the public burdens, and it' is only in those cases where the property is put to some use calculated to minimize the expenses of government that public policy justifies an exemption.’ People ex rel. Medical Society of Kings County v. Neff, 34 App. Div. 83, 53 N.Y.S. 1077, 1079.” (Page 205)
‡ % >(c ‡ ‡ ‡
“Charity is a very broad term. In one sense a person does charity who speaks a kind word to another. One who assists the poor and the needy by the donating of food and clothing is unquestionably doing charity. The problem which confronts us is not are such acts charitable, but are they such as were within the contemplation of the lawmakers when they used the words ‘charitable undertakings.’ In almost all cases in which there were under consideration exemptions claimed by organizations doing similar work, it has been held that in the contemplation of the lawmakers the word ‘charity’ was intended to include only such works as tended to relieve the public authorities to some extent from the burden of taking care of and providing for the poor, the sick, and the needy.
“Only on the theory that the charitable acts alleviate the burdens of government can exemptions of property devoted to charitable purposes be justified. As typical examples of language used in similar cases, we cite the following: * * * ” (page 206)
sjc s|c ‡ s|e ‡ ‡
“ ‘The reason for exempting certain property from public taxes arises from the fact that such property, in its use for charitable purposes, tends to lessen the burdens of government and to affect the general welfare of the public. It is not urged that a college fraternity is a public charity, but the contention is that it is a beneficent and charitable organization. We are of the opinion, however, that the beneficent and charitable organizations contemplated in the Revenue Act are those which tend, in their operation, to lessen the burdens of government. While the appellant exercises a good influence on the student body and relieves the university by providing rooming facilities for men, we are of the opinion that its property does not come within the provisions and intent of the Revenue Act herein referred to.’ People ex rel. Carr v. *33 Alpha Pi, Pi of Phi Kappa Sigma, 326 Ill. 573, 158 N.E. 213, 215, 54 A.L.R. 1376.” (Page 207)

“We are of the opinion that however the property may be owned, whether by an individual, or by a charitable organization, or by one or both charitable and fraternal, the character of work undertaken must include, in a substantial way and as one of the principal objects of the organization, the doing of such work as relieves the commonwealth of some of its burdens; and that the property itself, and not only the organization, must be devoted to such undertakings.” (Page 208)
In the case of Ruston Hospital, Inc. v. Riser, La.App., 191 So.2d 665, the Court stated at pages 666 and 667:
“As a point of departure for consideration of the issue presented, it is important to observe that exemptions from taxation are to be strictly construed. As was noted in the opinion of our Supreme Court in Mattingly v. Vial (1939), 193 La. 1, 190 So. 313:
“ ‘There is no principle of interpretation more firmly and uniformly established by the jurisprudence of this and the other States than the unbroken rule that exemptions from taxation are to be strictly construed against the person claiming the exemption, and that any plausible doubt is fatal.’ ”
******
“The basic reason for the exemption under. consideration is found in the theory that the actual charitable acts serve to lessen the burdens of government and relieve the State, its subdivisions and taxpayers of the ultimate responsibility of caring for the sick and the indigent.”
In Hazen v. National Rifle Ass’n of America, 69 U.S.App.D.C. 339, 101 F.2d 432 (1938), the District of Columbia Court of Appeals said that the reason for the federal tax exemption is that the charitable undertaking relieves the government of some of its burdens.
In Washington Chapter, etc. v. District of Columbia, 92 U.S.App.D.C. 139, 203 F.2d 68, the District of Columbia Court of Appeals held that there must be some relief of the public burden in the generally accepted sense for the tax exemption to apply. It must relieve the state of a burden that the state, might reasonably assume.
It also stated at page 70:
“Exemptions from taxation are strictly construed against those claiming the exemption, even if the claimant is a charitable or educational institution, because such exemptions are in the nature of a renunciation of sovereignty, and are at war with sound basic tax philosophy which requires a fair distribution of the burden of taxation. As expressed in 2 Cooley, The Law of Taxation, § 672, at p. 1403:
“ ‘An intention on the part of the legislature to grant an exemption from the taxing power of the state will never be implied from language which will admit of any other reasonable construction. Such an intention must be expressed in clear and unmistakable terms, or must appear by necessary implication from the language used, for it is a well-settled principle that, when a special privilege or exemption is claimed under a statute * * * It is to be construed strictly against the property owner and in favor of the public. This principle applies with peculiar force to a claim of exemption from taxation.’ ”
It further stated at pages 70 and 71:
“A tax exemption of this character can justly be sustained only upon the ground that the concession is due as a quid pro quo for the performance of a service essentially public, which the state is thereby, at least partially, relieved pro tanto from the necessity of performing. *34 Without that concurring prerequisite, an exemption becomes virtually a gift of public funds, at the expense of the taxpayer.”
There is much discussion in the briefs filed by both parties to this litigation of the position of the employee trusts under both the Federal and the State law, so far as taxation is concerned. The Federal Acts and the law of the State of Louisiana provide that the trusts shall pay no income taxes. The Federal Government, through the Federal Courts, by virtue of decisions in the Gimbel case and other cases cited by the appellees, held that the Trusts were exempt also from inheritance taxes; subsequently however, this was altered. In the case of Watson v. United States, the Gimbel case and other decisions of the Federal Court following the Gimbel line, were overruled; in so doing, the Court in Watson v. United States, 3 Cir., 355 F.2d 269, 272 (1965), stated:
“In any event, whatever might be said as to the rightness of said definition, it could not be correctly applied to the trust at bar which contains entirely proper personal, private and legitimately selfish elements. And certainly, as of this day and age, that definition cannot be said to accurately describe the Gimbel employees’ foundation. We strongly disagree with the suggestion that the conclusion that the Testamentary Trust was made for exclusively charitable purpose in accordance with § 812(d) was a permissible one under C. I. R. v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). That conclusion was founded on a similar one in Gimbel which had been made by the appellate court in reversing the lawfully designated fact-finder, the Board of Tax Appeals. With the lapse of time and changed economic conditions the district court’s holding in this appeal is even more clearly wrong than the appellate conclusion in Gimbel upon which it relies. In fairness we note and emphasize that the district judge had no recourse but to follow the then undisturbed Gimbel opinion. It should be noted also that the other decisions named in support of Gimbel, to the extent that they do, are, to say the least, as outmoded as is Gimbel.”
On page 271 the Court stated:
“From the above stipulated facts it would seem that the Testamentary Trust involved was manifestly not a charitable bequest within the definition of Section 812(d). We are not here dealing with an impoverished class. In thought and execution this was an ordinary pension trust, explicitly for the benefit of both employee and employer. It was a real part of the compensation to the employee; a logical, legitimate and impelling incentive to a person both in seeking employment with the company and after being hired. The quid pro quo to the company was at least as important, in helping to attract desirable personnel and obtaining satisfactory results from them.”
Therefore, it may now be stated that the same Federal Court that approved the theory initiated in the Gimbel case has overruled the position of the Government with reference to the exemption accorded to trusts of the character discussed herein.
Moreover the American Law Institute, Restatement of the Law, Second, Trusts 2d, Sec. 375, at page 263, contains the following comment:
“g. EMPLOYEES. A trust to relieve necessitous persons who are or have been employed in the particular trade or profession is charitable. So also, a trust for the relief of poverty is charitable although the benefits are confined to the employees of the particular railroad or industrial organization. On the other hand, an employees’’ pension trust is not charitable, although it is provided by statute that such a trust shall not be subject to the rule against perpetuities.” (Emphasis ours.)
The Times-Picayune Publishing Company did a laudable thing on behalf of its *35 employees when it created the retirement and pension trust, but the trust is not exempt from inheritance and estate taxes for the reason that only a charitable trust is tax-exempt under the law of this State, and the trust formed here is not a charitable trust. The provisions of the trust itself reveal that it was created primarily to pay the employees retirement or pension emoluments. The sums so paid are not gifts, but are funds earned by the employees who performed services for the Times-Picayune Publishing Company consistently for a considerable number of years in order to entitle them thereto, over and above the salary they received from the Company, and are properly to be considered as added compensation. The beneficiaries of the trust here receive the pension or retirement payments without regard to actual need. While funds paid to an employee to relieve poverty or some other condition of want would be charity, the American Law Institute in Section 375 of the Restatement of the Law, Second, Trusts 2d, states that trusts established for employees’ retirement and pension benefits are not charitable trusts.
Even though the trust funds consist entirely of funds contributed by the employer, the contribution is, in a sense, a self-serving act. According to the booklet published by the Times-Picayune, offered in evidence herein, to explain the profit-sharing retirement plan to its employees, two of the main objectives of the plan are:
1. The retention of its employees; and
2. To provide them with an initiative to work more efficiently for the company.
The booklet states inter alia:
“The Primary purpose of the Plan is to build up a Fund for retirement benefits. It is not intended to be of benefit to employees who do not stay with the Company.”
* * * * * *
“Secondly, it is desired that the amount of these benefits depend directly upon the profits of the Company, so as to provide a direct incentive to every eligible employee to contribute to the efficient operation of the Company.”
The anticipation of such a retirement fund entices one to seek employment with the company and to do adequate work which will enable them to remain in that company’s employment so that they will eventually receive such benefits. It serves the employer’s interest in helping it to retain steady, responsible employees. Therefore the establishment and maintenance of the pension trust fund by the employer was not simply a gratuitous undertaking, but more in the nature of a remunerative donation since it was getting something in return for what it gave.
We are therefore of the opinion that the Trust formed by the Times-Picayune Publishing Company is not a charitable trust and that the legacy granted to it by the decedent, Chapman H. Hyams, III should not be exempt from the taxes levied under the Louisiana inheritance and estate tax laws.
It is stipulated among the parties that if the legacy under discussion herein is held to be non-exempt, the amount of taxes due would be $26,751.26. As we hold that the tax is due and owing in this matter, the judgment rendered herein on the 31st of March, 1966 by the Court a quo, decreeing that the legacy of 5/24ths of the residuary estate of the decedent, Chapman H. Hyams, III to the Times-Picayune Publishing Company Profit-Sharing Retirement Trust be exempt from taxes is reversed; and judgment is herein rendered in favor of the Inheritance Tax Collector of the Parish of Orleans, and against the testamentary executor of the Succession of Chapman H. Hyams, III, ordering the payment of the inheritance and estate tax due the State of Louisiana in this Succession proceeding in accordance with this decree. All costs of this Court shall be borne by appellee.
Reversed and rendered.