476 So.2d 1086 (1985)
LOUISIANA ASSOCIATION OF EDUCATORS, et al., Plaintiffs-Appellants,
v.
IBERIA PARISH SCHOOL BOARD, Defendant-Appellee.
No. 84-672.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1985.
*1088 Kean, Miller, Hawthorne, Darmond, McCowan & Jarman, Pamela C. Walker, Baton Rouge, for plaintiffs-appellants.
J. Wayne Landry, Asst. Dist. Atty., New Iberia, for defendant-appellee.
Before GUIDRY, LABORDE and KING, JJ.
KING, Judge.
The sole issue presented by this appeal is the correctness of the judgment of the trial court dismissing plaintiffs' suit for a declaratory judgment.
This is a declaratory judgment action wherein the plaintiffs, Louisiana Association of Educators and Iberia Association of Educators, (hereinafter referred to as the Associations) seek a judgment declaring and decreeing that the defendant's, Iberia Parish School Board, (hereinafter referred to as the School Board) interpretation and implementation of a May 23, 1979 sales tax proposition (hereinafter referred to as the proposition) is in violation of the terms and purposes of the proposition, or in the alternative, declaring and decreeing the Associations' rights under the terms of the proposition. The Associations complain about the manner and timing of pay reductions allegedly made by the School Board in accordance with the provisions of the proposition. The trial court rendered judgment in favor of the School Board, and dismissed the Associations' petition at plaintiffs' cost. The Associations timely appeal. We affirm.

FACTS
On May 23, 1979, the voters of Iberia Parish, Louisiana in an effort to provide teachers and school board employees with additional revenues, passed a sales tax proposition. The proposition provided in part:
"Shall the Parish School Board of the Parish of Iberia, State of Louisiana, under the provisions of Article 6, Section 29(A) of the Louisiana Constitution of 1974 and other constitutional and statutory authority supplemental thereto, be authorized to levy and collect a tax of one-half of one per cent (½%) upon the sale at retail, the use, the lease or rental, the consumption, and the storage for use or consumption, of tangible personal property and on sales of services in the Parish, all as defined in La R.S. 47:301 through La R.S. 47:317, inclusive, with the proceeds of said tax (after paying the reasonable and necessary costs and expenses of collecting and administering said tax) being dedicated and distributed in the stated amounts and to be expended for the following purposes and in the following order of priority:
1. Ninety percent (90%) of the tax revenues to be appropriated and expended for the purpose of payment of costs and expenses of increasing the Parish supplement to the State Minimum Salary Schedule and/or other pay schedules presently being followed in the following stated amounts for the following categories of employees:
a. Certificated Personnel: Persons whose job descriptions require certification:

1. Superintendent $1,600
2. Assistant Superintendent 1,600
3. 12 month employees 1,600
4. 11 month employees 1,466
5. 10 month employees 1,333
6. 9 month employees 1,200

b. Non-certified Personnel: Persons whose job descriptions do not require certification:

1. 12 month employees $1,000
2. 11 month employees 917
3. 10 month employees 833

*1089
4. 9 month employees 750
5. Part-Time employees 500

2. Ten percent (10%) of the tax revenues to be appropriated and expended on a pro rata basis of the student population for instructional materials and equipment.
3. All moneys collected in excess of that needed to carry out the expenditures stated above under No. 1, a and b, are to be placed in a reserve fund, such fund and the interest collected therefrom to be used only for the following:
(a) Guaranteeing the disbursement of the salary supplement to be provided under No. 1, a and b;
(b) Paying expenses to be incurred from disbursing the salary supplement, such expenses to include payment of the employer's share (8%) of retirement fund contributions and costs resulting from granting sabbatical and/or other leaves;
(c) Providing for an annual increment, or other employee benefit, to the above described supplement in amounts permissible according to the funds realized, and according to a pre-established plan.
4. Restrictions to be placed on expenditures:
"Should the tax not produce the necessary revenues in any one year, and should there be no moneys provided for disbursement as cited under No. 3 above, the amount of the supplement from this fund for each employee would be proportionately reduced for the following year, such reduction to be replaced when funds are available?"
Since the proposition was passed in 1979, the School Board authorized the initial salary supplement, as permitted in Paragraphs 1, (a) and (b), of the proposition (hereinafter referred to as the supplement). The School Board has always been and is now able to pay the supplement since the proposition was passed. In addition to the supplement, the School Board also granted four salary increments as permitted in Paragraphs 3 and 4 of the proposition. These salary increments (hereinafter referred to as the increments or increment 1, 2, 3, or 4) were made as follows:
(1) July 16, 1980 (effective for 1980-1981 school year)
(2) January 21, 1981 (effective for January 1, 1981)
(3) March 3, 1981 (effective for 1981-1982 school year)
(4) September 1, 1982 (effective for 1982-1983 school year).
Teachers' pay in Iberia Parish, Louisiana during the 1982-1983 school year were composed of (1) the State minimum foundation schedule as provided for in LSA-R.S. 17:421; (2) a parish supplement authorized under the guidelines of a 1968 sales tax proposition; (3) a parish supplement authorized under the guidelines of Paragraph 1 of the 1979 sales tax proposition; and (4) the increments authorized under the guidelines of Paragraphs 3 and 4 of the 1979 sales tax proposition.
The trial court took judicial notice of the fact that in 1979, when the sales tax proposition was passed, the oil industry was booming and the revenues from the sales tax were very high. However, the state and nation experienced a recession a few years later and Iberia Parish, Louisiana also experienced a similar recession. Business fell off and the revenues from the 1979 sales tax dropped. The sales tax revenues for 1983 were 23 percent below that of 1982.
In the middle of the year 1982 the School Board became aware of the declining. sales tax revenues and realized that though revenues from the sales tax were then sufficient, to continue to fund payment of the supplement previously authorized, there might not be sufficient sales tax revenues to continue to fund payment of the increments previously authorized or any new increments that might be authorized under the proposition. Early in the 1982-83 school year, the School Board surveyed each school board employee and teacher by written ballot regarding this potential problem. The employees and teachers overwhelmingly requested the School Board to *1090 continue payment of the supplement and the three previously authorized increments and requested the School Board to authorize a fourth increment under the proposition, though the School Board warned in the ballot that it retained the right to reduce or eliminate any or all of the increments should the revenues generated by the sales tax not be sufficient to pay the increments without creating a deficit in the sales tax fund account.
The School Board authorized a fourth increment under the proposition on September 1, 1982, effective for the 1982-1983 school year, but on March 8, 1983, in the face of declining sales tax revenues that had previously been predicted, the School Board voted to eliminate increments 3 and 4, effective March 1, 1983, for the remainder of the 1982-1983 school year. Had the School Board continued to pay increments 3 and 4 during the 1982-1983 school year a $290,292.26 deficit would have resulted in the sales tax fund account. The School Board continued to pay the supplement and increments 1 and 2 previously authorized under the proposition for the remainder of the 1982-1983 school year. This reduced the balance in the sales tax fund account to $98,500.70 at the end of the 1982-1983 school year.
The Associations filed this petition for declaratory judgment on July 20, 1983, challenging the School Board's authority to reduce salaries in the middle of the 1982-1983 school year and its legal right to maintain a minimum reserve in the sales tax fund account. The trial court held that the School Board's actions were legal and dismissed the Associations' petition. The Associations appeal setting forth the following assignments of error:
1. The trial court erred in holding that the 1979 sales tax proposition did not prohibit the School Board from reducing previously authorized salary increments during any school year; and
2. The trial court erred in holding that the School Board had the power to reduce teachers' salaries below that contracted for in the annual teachers' contracts.

INTERPRETATION OF THE TAX PROPOSITION
The Associations contend that the trial court erred in deciding that the proposition did not prohibit the School Board from reducing previously authorized salary increments during any school year. The Associations maintain that the School Board's reduction of increments 3 and 4 were arbitrary and contrary to the terms of the proposition. The Associations advance the argument that the proposition did not distinguish between salary "supplements" and salary "increments" in Paragraph 4 of the proposition where it provided that "Should the tax not produce the necessary revenues in any one year, and should there be no moneys provided for disbursement as cited under No. 3 above, the amount of the supplement from this fund for each employee would be proportionately reduced for the following year, such reduction to be replaced when funds are available." According to the Associations, if Paragraph 4 of the proposition refers only to the supplement, the proposition would give no guidance whatsoever as to reductions of the increments and the only guidance would be found in Paragraph 3(c) of the proposition which made provision for annual increments. And, in the alternative, the Associations argue that if the proposition intended to make such a distinction between the supplement and increments then the proposition is so ambiguous that the court must look to the interpretation of the School Board, the body charged with implementing the proposition, which the Associations claim used the terms interchangeably.
Each paragraph of the proposition must be read together and each word given meaning and effect in order to determine the meaning of the whole. Ouachita Parish School Board v. Ouachita Parish Supervisors Association, 362 So.2d 1138 (La. App. 2nd Cir.1978). The clear and unambiguous language of Paragraphs 3 and 4 of the proposition provides only that the supplement *1091 be maintained for the current school year, when revenues produced by the sales tax are not sufficient to provide for payment of the supplement provided for in Paragraph 1(a) and (b) of the proposition, and that the following school year's supplement be reduced proportionately, with such reduction being replaced when funds are available. When Paragraphs 3 and 4 of the proposition are read together it is clear that payments of increments would not be allowed when revenues would not be sufficient for the continued payment of the supplement authorized under the proposition. Paragraphs 3a, 3b, 3c and 4 of the proposition are intended to guarantee the continued payment of the supplement authorized under Paragraph 1(a) and 1(b) of the proposition. The evidence shows that if increments 3 and 4 had continued to be paid, as the Associations suggest they should have been, a deficit of $290,292.26 in the sales tax fund account would have occurred in the 1982-1983 school year. This would have resulted in all four of the increments as well as the supplement having to be eliminated. LSA-R.S. 17:89 prohibits deficit spending by school boards. Clearly, it was not the intent of the 1979 sales tax proposition to permit the School Board to pay out more money than was generated by the sales tax or to eliminate the supplement in an attempt to continue to try to pay the supplement and the increments previously authorized under the proposition.
Reading the proposition as a whole, we find that it does in fact draw a clear and unambiguous distinction between "supplements" and "increments." We also find that though the School Board in its meetings and minutes at times used the terms somewhat loosely, it always recognized the distinction between the two and treated them according to the tenor of the 1979 sales tax proposition. For this reason we find the provision in Paragraph 4 of the proposition regarding maintenance of payments for the whole school year despite lack of revenues in the sales tax fund account applies only to the supplement authorized under Paragraphs 1(a) and (b) of the proposition. We do not find that the proposition permits or prohibits increments from being either implemented or discontinued at any time during any school year.
The Associations contend that since the School Board allocated up to $800,000.00 from its general fund for the 1983-1984 school year to supplement the sales tax fund account to ensure the continued payment during the 1983-1984 school year of the supplement and increments 1 and 2 authorized under the proposition, this "interpretation" of funding "increments" from the general fund should be accorded great weight under the doctrine of contemporaneous construction and that the same procedure should have been used by the School Board to pay increments 3 and 4 for the remaining months in the 1982-1983 school year (March, 1983 to May, 1983).
The doctrine of contemporaneous construction is a well recognized tool of statutory interpretation. It provides that when an administrative body has over a long period of time placed an interpretation upon a legislative enactment, the interpretation of said body is entitled to great weight in the determination of the meaning of the legislative enactment. Washington v. St. Charles Parish School Board, 288 So.2d 321 (La.1974); Ouachita Parish School Board v. Ouachita Parish Supervisors Association, supra; Richland Parish Bus Drivers Association v. Richland Parish School Board, 420 So.2d 696 (La. App. 2nd Cir.1982). The contemporaneous construction doctrine is applicable to a taxation ordinance. Ouachita Parish School Board v. Ouachita Parish Supervisors Association, supra.
The sales tax proposition did not provide that the School Board's general budget had to be used to pay the salary supplement and increments which the proposition permitted to be authorized. The School Board was not legally obligated to allocate the $800,000.00 from its general fund in order to ensure payment of the supplement and increments 1 and 2 for the 1983-1984 school year and the Associations *1092 would have no right to complain if the School Board had chosen not to do so. The School Board's allocation of the money from the 1983-1984 general fund was the first time the School Board took such action in regard to the 1979 sales tax proposition. This does not constitute an interpretation "over a long period of time" as was contemplated in the Ouachita Parish School Board and the Richland Parish Bus Drivers Association cases where the interpretations continued in existence for eight years and fourteen years respectively. Here, the School Board only made an allocation of general funds toward payment of the supplement and increments 1 and 2 for the 1983-1984 school year. Had the School Board not done so, the supplement and increments 1 and 2 might not have been paid during the 1983-1984 school year. This action by the School Board, which occurred after increments 3 and 4 had been discontinued for the months of March, 1983 to May, 1983, in the 1982-1983 school year, cannot be construed to be a long-standing administrative interpretation for which the doctrine of contemporaneous construction could be applied and which would require the School Board to allocate money from its general fund to also maintain payment of increments 3 and 4 during the 1982-1983 school year. In fact the very action the Associations urge for consideration of contemporaneous construction did not even occur until after the action the Associations complain of and for this very reason could not be considered an administrative interpretation over a long period of time prior to the action complained of.
Having found that the School Board has the power to eliminate increments 3 and 4, we also find that the record clearly indicates that the School Board did not abuse its discretion nor did it act arbitrarily or unfairly in eliminating increments 3 and 4. The Court's function is not to budget funds, but to decide judicial questions. Instead, the budgeting of funds is a matter within the sound discretion of the School Board and absent clear abuse of its legal authority and discretion, the Court will not interfere with decisions of the School Board. Kemp v. Jefferson Parish School Board, 305 So.2d 744 (La.App. 4th Cir.1974), writ den. 309 So.2d 346 (La.1975). The School Board's decision not to use general fund money to supplement the sales tax fund account for the 1982-1983 school year is just this type of administrative matter. Despite the appellants' argument that general fund money should have been used, the School Board apparently was in no position in March, 1983 to assure itself that it would finish the fiscal year with a surplus in its general fund which could be used to supplement the sales tax fund account. The evidence shows that the School Board did not act arbitrarily or unfairly in not using general funds to pay increments 3 and 4 for the remainder of the 1982-1983 school year.
The Associations also maintain that the School Board improperly established as policy, that there would be no disbursements from the sales tax account if the reserve balance fell below $350,000.00. Examination of the record shows clearly that the Associations are wrong in this assertion. The School Board did not establish such a policy. Instead, it merely implemented an accounting procedure by which it could keep track of the funds in the account and ensure that they were sufficient to maintain continuous payment of the original supplement and the authorized increments permitted by the proposition. This accounting required only that the Superintendent inform the School Board at any time the balance in the account fell below $350,000.00. This was not an arbitrarily chosen figure. It was chosen because the cost of funding the supplement and all four of the increments was approximately $325,000.00 per month. The School Board never refused to pay the increments simply because the balance in the sales tax fund account fell below $350,000.00. In fact the evidence shows that even after the School Board eliminated increments 3 and 4 it continued to pay the original supplement and the first two increments which resulted in the balance in the account standing at *1093 only $98,500.20 in June, 1983 at the end of the 1982-1983 school year.
For these reasons we do not find that the trial judge was clearly in error in finding that the School Board had a right under the proposition to terminate increments 3 and 4 during the 1982-1983 school year. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973).

RIGHTS AND OBLIGATIONS UNDER THE TEACHERS' CONTRACTS
The Associations also argue that the trial court erred in holding that the School Board had the power to reduce teachers' salaries below that contracted for in the annual teachers' contracts which they claim provided that the teachers would be paid in accordance with the salary schedule adopted by the School Board for the 1982-1983 school season. The Associations maintain that the 1982-1983 adopted salary schedule included increments 3 and 4 which were eliminated by the School Board in March, 1983, and for this reason, the School Board did not have authority to reduce the salary contracted for by conventional obligation, citing Young v. Allen Parish School Board, 349 So.2d 469 (La. App. 3rd Cir.1977), regardless of whether or not it had the legal authority to do so under the proposition.
The School Board's power to fix salaries derives from LSA-R.S. 17:81 and includes the power to increase or decrease teachers' and school board employees' salaries, except insofar as LSA-R.S. 17:421 provides a "minimum salary schedule." Mouras v. Jefferson Parish School Board, 300 So.2d 540 (La.App. 4th Cir.1974), writ den. 302 So.2d 619 (La.1974); Kemp v. Jefferson Parish School Board, supra. The Associations urge this Court's previous decision in Young v. Allen Parish School Board, supra, where it was recognized that wage provisions in teachers' contracts will be enforced and also that obligations under teacher contracts cannot be avoided on the grounds that the contractual provisions grant more than is required by law. We continue to agree with these two statements. However, the facts of Young are sufficiently different from those involved in this case that we can distinguish between the two.
In Young, the Allen Parish School Board, according to its interpretation of LSA-R.S. 17:423, had in the past given salary credit for military service to Young and several other teachers although their military service was prior to their teaching service. Upon realizing that it had mistakenly interpreted the statute, which in reality, provided only for credit for military service which interrupted teaching service, the School Board attempted to withdraw the salary credits from Young and others. The court in Young held that the School Board had intended to give Young salary credit for military service prior to his teaching service at the time he was offered and accepted his teaching position for the period in question. Therefore, in Young there was a meeting of the minds regarding the salary element of the contract that Young signed, which included the prior military service credit, and Young was entitled to military service credit for that school year.
The situation is different in this case. The clear intent and purpose of the sales tax proposition of 1979 was to generate revenues from which a salary supplement and salary increments could be given to teachers in Iberia Parish, Louisiana. It is also clear that these tax revenues were not to go into the general fund, but were to be maintained in a special sales tax fund account which was to be used only for the special purpose of funding the supplement and increments authorized under the proposition. This the School Board did. The proposition also provided that if there were excess funds over the amount needed to pay the supplement authorized by the proposition, these surplus funds could be used to provide additional increments according to a pre-established plan (Paragraph 3c of the proposition). This the School Board also did. It obviously was not the intent of the proposition that more money be expended than was generated by the sales *1094 tax. The record reflects that the School Board was fully cognizant of this fact. The School Board had a pre-established plan to pay increment number 4 as long as funds were available.
There is no teachers' contract in evidence to show the exact terms of the 1982-1983 school year contract. A blank printed form of contract for the 1983-1984 school year (Plaintiffs' Exhibit 2) provides that the teacher is appointed a teacher for the current school session, "... with the salary to be paid in accordance with the salary schedule adopted by the School Board..." for the current school session. The testimony of the Superintendent of the School Board implies that this form of teacher contract was the one used by the School Board during the 1982-1983 school year. The Superintendent also testified that annual salary schedules were adopted by the School Board at different times of the year and that sometimes teacher contracts were signed by teachers before a salary schedule was even adopted. There is no evidence in the record as to what salary schedule the School Board adopted for the 1982-1983 school session nor when this was done. In fact the evidence in the record shows that in the past the School Board had adopted at least one salary increment, Number 2, effective during the middle of a school session. The School Board, in entering into employment contracts with its teachers for the particular school session where an increment was authorized after the contracts were signed, clearly could not have intended to bind itself to pay future salary increments it had not yet authorized just as it could not have intended to bind itself to continue to pay authorized increments under the proposition when sufficient funds ceased to exist in the sales tax fund account. Since the Associations have not met their burden of proving the exact terms of the teacher contracts for the 1982-1983 school session, the date when the 1982-1983 salary schedules were adopted by the School Board with reference to the dates when the 1982-1983 teacher contracts were signed, nor the provisions of the salary schedule applicable to the 1982-1983 teacher contracts, we can not say that there was a meeting of the minds such that the School Board was contractually bound to continue to pay increments 3 and 4 when funds did not exist to pay them. There is no evidence in the record from which we can determine there was a meeting of minds between the School Board and the teachers as to the salary schedule applicable to teacher contracts for the 1982-1983 school session or even what the exact salary schedule was for that school session.
We find that the evidence in the record does not show the terms of the 1982-1983 teacher contracts insofar as the agreed upon annual salaries, that the evidence does not show a meeting of the minds between the parties concerning the 1982-1983 annual salaries, and that the evidence does not show that the School Board intended to be obligated to pay the increments when funds were not available. For these reasons we do not find that the trial court was clearly in error in holding that the increments 3 and 4 were not protected by the teachers' 1982-1983 school session contracts when there were not sufficient revenues in the sales tax fund account to pay these increments. For this reason it is unnecessary for us to discuss the effect of the balloting on increment number 4 insofar as it might be a waiver of the rights of the teachers and employees to collect this increment.
The School Board was faced with the dilemma of declining revenues. Knowing the intent of the proposition was not to have expenditures exceed the revenues generated by the sales tax, and in addition, faced with the statutory prohibition against deficit spending, LSA-R.S. 17:89, the School Board, after a careful and deliberate assessment of the situation, took prudent action that it deemed necessary and appropriatethe elimination of payment of increments 3 and 4 for the remainder of the school year 1982-1983. By doing so, the School Board was able to maintain the payment of the original supplement which was the major objective of the 1979 sales tax *1095 proposition. Had the School Board allowed a deficit in the sales tax fund account to occur, the original salary supplement would have been jeopardized. In addition, the action of the School Board allowed it to continue payment of increments 1 and 2. The evidence shows that the School Board acted as a prudent administrator of public money and avoided a deficit situation, while protecting the long-term interests of the teachers and employees.
For the reasons assigned, the judgment appealed from is affirmed.
AFFIRMED.