Dear Representative Scalise:
You have requested an opinion of the Attorney General regarding the repeal of local tax exemptions and the imposition of a local amusement tax. You specifically ask:
1. Can the City Council of New Orleans ("City") vacate local tax exemptions adopted pursuant to R.S. 39:468?
2. If the answer to question No. 1 is in the affirmative, can the local amusement tax levied pursuant to R.S. 4:41 be applied to registration fees paid by individuals to attend conferences and symposia presented by professional organizations at the Ernest N. Morial Convention Center ("Center")?
3. If the answer to question No. 1 is in the affirmative, can the local amusement tax levied pursuant to R.S. 4:41 be applied to the sale of goods, merchandise or other tangible personal property at a trade show or other event when the primary purpose of the show is the sale of such goods or property, and where the payment for admission entitles patrons to be present at the show or event?
R.S. 39:468 provides for the exemption from taxes levied by the State as follows:
"§ 468. Tax exemption, publicly-owned facility
 Any event, activity, or enterprise, or the right of admission thereto, conducted in any publicly-owned facility owned and operated by or for the state, or any of its agencies, boards, or commissions, or by any political subdivision, or any sale, service, or other transaction occurring in such facility or on the publicly-owned property on which the facility is located, including without limitation the sale of admission tickets to events, activities, or enterprises, wherever sold; parking; and tours of the facility shall be exempt from all present and future taxes levied by the state including but not limited to the sales, use, amusement, or any other tax; provided however, that such exemption shall not apply unless the local taxing authority first exempts from any tax levied by that authority such events, activities, enterprises, sales, services, or other transaction occurring within all publicly-owned facilities within the jurisdiction of said local taxing authority. However, this exemption shall not extend to any sale of goods or other tangible personal property at a trade show or other event at which the sale of such goods or property is the primary purpose of the show or event."
As can be seen from the above, Section 468 exempts from all state taxes any event, including the admission thereto, and any sale, service or other transactions occurring at said event, where the activity or event is held in any publicly-owned facility. However, the exemption will not apply unless the local taxing authority (i.e., the City of New Orleans) likewise exempts from any and all taxes levied by the City, these same events, sales, services or other transactions held in all publicly-owned facilities within the jurisdiction of the City.
Section 468 further provides that the state tax exemptions afforded therein do not extend to the sale of goods at trade shows or events at which the sale of such goods constitutes the primary purpose of the show or event.
The Council subsequently adopted Section 62-71 of the City Code which purports to comply with the conditions contained in R.S.39:468. We have not been requested to opine as to the form and legality of Section 62-71. Therefore, the answer to your first query is predicated upon the assumption that the City's public facility tax exemption ordinance is valid. Assuming this to be the case, we are of the opinion that the City may amend and/or revise such legislation, thereby vacating same. We find support for our position in the City's Charter and R.S. 33:1364.
The Charter is implemented by Act No. 338 of the 1936 Regular Session of the Louisiana Legislature. The broad and sweeping powers granted to the City by its Charter in Section 1(d), (f), (h) and (j) clearly authorize the City to pass and repeal ordinances and to levy and collect any and all kinds and classes of taxes.
In addition, R.S. 33:1364 provides the following:
"§ 1364. Revision of ordinances
 Any municipality or parish may, through its governmental authority amend and revise on any date its existing ordinances, in whole or in part, may compile the revision in book or pamphlet form and may adopt and promulgate the same."
Having answered your first question in the affirmative, we now focus on your second question. The enabling legislation authorizing the Council to levy an amusement tax is found at R.S.4:41. It provides, in pertinent part, the following:
 "§ 41. Amusement tax for relief of public and quasi-public charitable institutions and human service programs.
 Any parish or municipality of more than three hundred thousand inhabitants may levy a tax . . . on any . . . exhibition . . . production . . . lecture, address . . . ."
Pursuant to the above authority, the Council enacted Chapter VI of the City Code (Section 6-1, et seq.) in 1940 to impose a five percent (5%) amusement tax on the gross receipts representing admission charges to the various events. The language in Section 6-1 which enumerates the events and/or activities upon which the tax can be levied is identical to the language appearing in Section 41, quoted supra. However, Section 6-3 expands the taxable items included in the term "Admission" to encompass:
 ". . . all amounts paid for admission, season tickets, refreshments, service and merchandise at any of the establishments set forth in Section 6-1 or other similar place furnishing a public performance for profit . . . ."
Your second question presupposes that the City has vacated its ordinance enacting Section 62-71 providing exemptions from taxes levied by the City on the events, sales, services or other transactions held in publicly-owned facilities within its jurisdiction. Given this assumption, you ask us to determine whether the amusement tax levied by the City pursuant to Section 6-1 may now be imposed upon registration fees for attendance at conferences and symposia held at the Center, a publicly-owned facility. In other words, considering the pertinent language in Section 6-1, does a professional conference or symposium constitute a "lecture" and/or "address".
Initially, we note that neither professional conferences nor symposia are among the exemptions listed in Section 6-4 of the amusement tax ordinance. Further, the Code provides no definitional guidance for these activities. However, we find the following jurisprudential guidelines to be applicable:
Statutory and jurisprudential rules of construction and interpretation of state statutes are applicable to the construction and interpretation of municipal and parochial ordinances. Bunch v. Town of St. Francisville, 446 So.2d 1357
(La.App. 1st Cir. 1984) and Louisiana TelevisionBroadcasting Corp. v. Total CATV, 341 So.2d 1183 (La.App. 1st Cir. 1977), writ refused 343 So.2d 1076 (1977).
In construing an ordinance, one must give it a reasonable construction and not one which is strained and shows an unnatural intent on the part of the City Council. City of New Orleansv. LEECO, Inc., 226 La. 335, 76 So.2d 387 (1954).
The meaning of a word in an ordinance may be ascertained from the meaning of other words with which it is associated. City ofBossier City v. Gray, 483 So.2d 1090 (La.App. 2nd Cir. 1986).
The interpretation given to an ordinance by municipal authorities is entitled to great weight. U.S. v. St. Bernard Parish,756 F.2d 1116 (5th Cir. 1985), cert. denied, 106 S.Ct. 830,474 U.S. 1070 (1985); and Little Giant Food Stores, Inc. v. StateDepartment of Public Safety, 416 So.2d 128 (La.App. 2nd Cir. 1982).
A court may not supplant a reasonable administrative interpretation of a city code merely because some other construction is deemed somewhat more reasonable. Administrative construction is not to be overturned unless clearly wrong or unless a different construction is clearly required.Synthetic Organic Chemical Mfrs. Ass'n v. Secretary,Department of Health and Human Services, 720 F. Supp. 1244
(W.D. La. 1989) and Huppenbauer v. Kissinger, 254 So.2d 636
(La.App. 4th Cir. 1971), rehearing denied.
The rule of contemporaneous construction applies to municipal ordinances, including municipal tax ordinances. LouisianaAssociation of Educators v. Iberia Parish School Board,476 So.2d 1086 (La.App. 3rd Cir. 1985); Gautreaux v. Board ofElec. Examiners of the City of Baton Rouge, 167 So.2d 425
(La.App. 1st 1964), rehearing denied; and Maes v. City ofNew Orleans, 97 So.2d 856 (La.App. Orl. Cir. 1957), rehearing denied.
Tax statutes should be liberally construed in favor of the taxpayer, but tax exemptions should be strictly construed against the taxpayer. Cox Cable New Orleans, Inc. v. City of NewOrleans, 664 So.2d 742, 94-2102 (La.App. 4th Cir. 11/16/95), writ denied 668 So.2d 364, 96-0203 (La. 2/28/96).
A court is obliged to follow an interpretation of a tax exemption which does not drastically reduce revenues and should restrict exemptions to no more than could possibly be intended.Mattingly v. Vial, 193 La. 1, 190 So.2d 313 (1939).
As previously noted, in Bunch v. Town of St.Francisville, 446 So.2d 1357, statutory and jurisprudential rules for the construction and interpretation of state statutes are applicable to municipal ordinances. The rules pertinent to your inquiry are succinctly stated in Cox Cable New Orleans,Inc. v. City of New Orleans, et al.,624 So.2d 890 (La. 1993), rehearing denied, as follows:
 "In interpreting statutes, the court must give the words of a law their generally prevailing meaning (except that words which are words of art or technical terms must be given their technical meaning). La. Civ. Code art. 11. And when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. La. Civ. Code art. 12. Furthermore, the meaning of words or phrases may be ascertained by the words and phrases with which they are associated. Words of general meaning should be applied only to such classes of things of the same general kind as those specifically mentioned. . . . The meaning of a word in a statute must be determined in light of the statute as a whole."
At issue in the Cox Cable case was a 1990 amendment to the City's amusement tax ordinance. The purpose of the amendment was to extend the tax to the subscription fees for cable television, broadening the definition of "production" to include same. The City argued that the inclusion of cable television is a natural extension of the term "production", which has always been one of the taxable items in R.S. 4:41 and the City's Code.
The Court rejected the City's argument, holding that the amusement tax did not contemplate cable television services within its list of taxable amusements, but was directed mainly to live entertainment open to the public or to entertainment presented at a particular public facility with an admission charge for each opportunity to view the scheduled event or performance.
The Court further held:
 "Modifying the tax to include cable television, which may be viewed at any hour of the day in the privacy of a subscriber's home for a subscription price, is not a natural extension of the taxable amusements for which state law authorized the imposition of pre-1974 amusement taxes. Moreover, any ambiguity in a statute imposing a tax is construed in favor of the taxpayer and against the taxing authority." [Emphasis added.]
In City of New Orleans v. Christian, 229 La. 855,87 So.2d 6 (1956), at issue was an amendment to the City's amusement tax ordinance which defined the term "Admission" to include:
 ". . . seats and tables, reserved or otherwise, and other similar accommodations, as well as all amounts paid for admission, refreshment, service, and merchandise at any of the establishments set forth above, or other similar place furnishing a public performance for profit, if any payment or part thereof, for admission, refreshment, service or merchandise, entitles the patron to be present during any portion of such performance." [Emphasis added.]
Defendant, a nightclub owner, contended that the language underscored in the above definition invalidly enlarged upon the definition of "Admission" found in R.S. 4:44, which provides:
 "The term `admission' as used in this chapter includes the charges made for seats and tables, reserved or otherwise, and other similar accommodations." [Emphasis added.]
In rejecting the defendant's argument, the Court held that the definition contained in the City's ordinance imposing a tax on refreshments, service, and merchandise is not an enlargement of the language in Section 44. The Court found the State statute to be:
 ". . . very broad and seems to cover all services rendered in the nightclub in view of the fact that the term `admission' is defined so as to include `other similar accommodations'."
Turning to the issue at hand, Webster's New Collegiate Dictionary defines "conference" and "symposium" as follows:
 "conference/a meeting of two or more persons for discussing matters of common concern; formal interchange of views;"
 "symposium/a social gathering at which there is a free interchange of ideas; a formal meeting at which several specialists deliver short addresses on a topic or on related topics."
Webster's further defines "address" and "lecture" as follows:
 "address/a formal communication; a prepared speech delivered to a special audience or on a special occasion; a place where a person or organization may be communicated with;"
 "lecture/a discourse given before an audience or a class, esp. for instruction;"
Applying the statutory rules and jurisprudential tenets summarized and discussed above, it would appear that the amusement tax could be extended to fees incidental to registration for conferences and symposia held at the Center which would entitle the registrant to attend same. In our opinion, such events would appear to constitute a "natural extension" of the terms "address" and "lecture" found in the City's ordinance.
However, this is not to say that an interpretation by the City excluding these events from the imposition of the tax is erroneous. To the contrary, as noted above, the interpretation given an ordinance by the City is entitled to great weight and will not be challenged unless a different construction is clearly required.
Accordingly, in reaching our conclusion that conferences and symposia would appear to be taxable, we acknowledge that an interpretation by the City excluding same from the imposition of its amusement tax would, in all likelihood, be deemed reasonable.
We turn now to your last question, to-wit: the applicability,vel non, of the City's amusement tax to the sale of goods, merchandise or other tangible personal property at a trade show or other event at which the sale of such goods or property is the primary purpose of the show or event.
As previously noted, the exemption from state taxes found in R.S.39:468 does not extend to such sales. Further, we find no such exemption listed in Section 6-4 of the City's amusement tax ordinance. Section 6-1 of the ordinance includes "exhibition(s)" as one of the events subject to the amusement tax. Webster's defines "exhibition" as follows:
 "exhibition/a public showing (as of works of art, objects of manufacture, or athletic skill)."
As previously discussed, the definition of "Admission" contained in Section 6-3 of the ordinance to include a tax on refreshments, service and merchandise is not considered to be an invalid enlargement of R.S. 4:44. City of New Orleans v.Christian, 229 La. 855, 87 So.2d 6 (1956). Again, applying the statutory rules and jurisprudential tenets summarized and discussed above, it would appear that the imposition of the amusement tax upon the sale of goods at a trade show or other event would constitute a natural extension of the term "exhibition".
However, the same caveat, discussed supra, relating to the City's interpretation and application of its own municipal tax ordinance would likewise apply here. In other words, should the City determine that the sales of such merchandise are not subject to its amusement tax, its determination will control unless found to be arbitrary, capricious or manifestly erroneous.
In summary, it is the opinion of this office that the City may enact an ordinance repealing and/or vacating a previously adopted ordinance affording exemptions from local taxes at events held in publicly-owned facilities. Assuming said tax exemptions are vacated and/or repealed, the City has the discretion/option to impose, or not impose, its local amusement tax upon registration fees paid by individuals to attend conferences and/or symposia held at the Ernest N. Morial Convention Center. Further, the City has the discretion/option to impose, or not impose, its local amusement tax upon the sale of goods, merchandise or other tangible personal property at a trade show or other event where the primary purpose of the show is the sale of such goods or property, and where the payment for admission entitles patrons to be present at same.
Trusting this adequately responds to your inquiry, I am
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: _________________________________ ROBERT E. HARROUN, III
Assistant Attorney General
RPI/Rob III/cla
Date Received:
Date Released:
Robert E. Harroun, III Assistant Attorney General