| t STEVEN R. PLOTKIN, Judge.
Plaintiff, Brett Crawford, Secretary of the Department of Revenue, State of Louisiana (hereinafter referred to as “Department”) appeals a trial court judgment al *1275 lowing the defendants, Troy J. and Tracy Duhon, to claim as an inventory tax credit on their 1998 individual income tax return 1998 ad valorem taxes paid by a third party, Leader Buick GMC Truck, Inc. For the reasons discussed below, we affirm.
STATEMENT OF FACTS
Automotive Investments, L.L.C., d/b/a Regency Buick, GMC (hereinafter referred to as “the L.L.C.”), was in the business of selling automobiles in the City of New Orleans during the tax year ending December 31, 1998. The members of “L.L.C.” were Mr. Duhon and Huey P. White, Jr. Mr. Duhon held a 90% interest in the L.L.C. and Mr. White held the remaining 10% interest. On or about February 27, 1998, the L.L.C. entered into a purchase agreement to buy the assets of “Leader Buick”, a dealership in New Orleans. One of the terms of the purchase agreement provided that the L.L.C. would reimburse Leader Buick for ten-twelfths of the 1998 ad valorem taxes previously paid by Leader Buick during the 1998 tax 12year, representing the ten-month period, March through December, that the L.L.C. owned Leader Buick’s assets.
The City of New Orleans is unique in that it assesses and collects its ad valorem taxes on inventory at the beginning of the calendar year in which the taxes are due. So, in the instant case, the property taxes for the calendar year 1998 were assessed as of January 31, 1998. In the other parishes in the State, the ad valorem taxes are due for the calendar year at the end of the year. This distinction affects the facts of this case since it involves a mid-year sale of the pre-taxed business inventory by one dealer to another.
In 1998, the City of New Orleans assessed Leader Buick for ad valorem taxes totaling $61,037.24 for the 1998 ad valorem tax period. Leader Buick’s total ad valo-rem tax bill as of February 1, 1998 was $173,208.59, which included delinquent ad valorem taxes owed from 1994 through 1998. On February 26, 1998, Courtesy Honda, an affiliate of Leader Buick, submitted a check for $193,878.68 to pay Tax Bill Number 3 9P1 312 01. The L.L.C. agreed to reimburse Leader Buick $51,505, which allegedly represented the L.L.C.’s allocable portion of the 1998 ad valorem tax bill. The Certified Public Accountant for the L.L.C. calculated that it was entitled to an inventory tax credit of $48,910. This credit passed through to the two members with $44,019 going to Duhon and $4,891 to White.
On their 1998 individual income tax returns each of the L.L.C. members claimed their portion of the credit. In addition, Duhon claimed an inventory tax credit for ad valorem taxes assessed against Regency Motors of Metairie, L.L.C., another dealership in which he had a 25% ownership. The total inventory tax credit claimed by the Duhons on Line 17C of the 1998 return was $57,865, of 13which $13,846 is attributable to ad valorem taxes paid by Regency Motors of Metairie.
The Department does not dispute the Duhons’ entitlement to the $13,846 credit for ad valorem taxes assessed against and paid by Regency Motors of Metairie. The Department only contests the Duhons’ claim of the $44,019 inventory tax credit, which represents the portion of ad valorem taxes actually paid to the Department by Leader Buick.
The Department disallowed the inventory tax credits claimed by the L.L.C. through its members. The Department takes the position that the inventory tax credits provided by LSA R.S. 47:6006 flow to the party that actually paid the ad valorem taxes to a political subdivision, in this case Leader Buick. However, the trial court found that the Duhons were entitled to claim the credit. The Department appeals.
*1276 On appeal, the Department asserts the following three assignments of error: (1) the trial judge erred in ruling that the Duhons were entitled to claim an inventory tax credit with respect to a portion of the ad valorem taxes the L.L.C. paid to Leader Buick, pursuant to a purchase agreement executed between the L.L.C. and Leader Buick; (2) the trial judge incorrectly placed the burden of proof on the Department; and (3) the trial judge erred by not requiring the Duhons to unequivocally and affirmatively establish their entitlement to the inventory tax credit.
Purchase agreement
The statute that is at issue in this case is LSA-R.S. 47:6006(A), which provides, in pertinent part, as follows:
| ¿There shall be allowed a credit against the corporate and personal income taxes and the corporation franchise tax for ad valorem taxes paid to political subdivisions on inventory held by manufacturers, distributors, and retailers.
Pursuant to the above statute, the Du-hons assert that they are entitled to claim a portion of ad valorem taxes the L.L.C. reimbursed to Leader Buick. The Duhons claim that, pursuant to the L.L.C.’s compliance with the purchase agreement, the members are allowed to step into Leader Buick’s shoes and claim a portion of the taxes actually remitted to the political subdivision by Leader Buick.
The Department’s position is that LSA-R.S. 47:6006 allows an inventory tax credit only for the taxpayer who actually incurred and paid the tax liability. The Department contends that since the purchase agreement was a private contract, the parties cannot force a third party to comply with the terms of the agreement. Thus, the Department argues, since the L.L.C. did not pay the taxes to the City of New Orleans, the members of the L.L.C. are not entitled to claim any of the ad valorem taxes as credit. The Department claims that since LSA-R.S. 47:6006(A) does not specifically provide that the tax credit is transferable it should be interpreted to forbid a transfer of the credit..
However, nothing in the language of LSA-R.S. 47:6006(A) limits the persons entitled to claim the tax credit to the person or entity that actually remitted the tax to the political subdivision. Moreover, the Department acknowledges that the L.L.C. actually reimbursed Leader Buick for the 1998 taxes in the instant case. Thus, the Department essentially admits that the L.L.C. is the party that ultimately paid the tax. The Department also admits that Judge Giarrusso was correct in noting that LSA-R.S. 47:6006 does not contain any language prohibiting the transfer of the inventory tax credit to a non-taxpayer. Thus, the trial court’s | ^interpretation of the statute was reasonable. We find no merit in the Department’s first assignment of error.
Burden of proof
Second, the Department contends that the Duhons carried the burden of proving that LSA-R.S. 47:6006(A) allows them to claim an inventory tax credit for the ad valorem taxes paid by Leader Buick. However, the Department’s arguments on this issue are not concerned with a failure of burden of proof, which always involves factual issues. In fact, the Du-hons essentially had no burden of proof in this case because the Department admitted all the relevant facts. The Department’s real concern in this case is simply statutory interpretation, which is a matter for the courts to decide, not for the parties to prove.
“Legislative intent is the fundamental question in all cases of statutory interpretation.” Theriot v. Midland Risk Ins. Co., 95-2895 (La.5/20/97), 694 So.2d 184, 186. In interpreting the statute at issue in the instant case, the First Circuit *1277 held that the maxim “expressio unius et exclusio alterius” is useful in statutory interpretation.
It teaches us that when the legislature specifically enumerates a series of things, the legislature’s omission of other items, which could have been easily included in the statute, is deemed intentional. And we have held that the legislature is presumed to act with full knowledge of well-settled principles of statutory construction.
Southlake Dev. Co. v. Dep’t of Revenue and Taxation, 98-2158 (La.App. 1 Cir. 11/5/99), 745 So.2d 203, 206 citing Theriot, 95-2895, 694 So.2d at 186-187.
In a case interpreting tax statutes, a court should start with the premise that taxing statutes must be strictly construed against the taxing authority. Goudchaux/Maison Blanche, Inc. v. Broussard, 590 So.2d 1159, 1161 (La.1991). |8In Broussard, the court held that when “a tax statute is susceptible of more than one reasonable interpretation, the construction favorable to the taxpayer is adopted.” Id. Exemptions from taxation are strictly construed and must be clearly, unequivocally and affirmatively established. The instant case involves a tax credit rather than an exemption. However, irrespective of whether it is termed an exemption, deduction or credit, the taxpayer is relieved of a tax burden so there is no distinction. Ethyl Corp. v. Collector of Revenue, 351 So.2d 1290, 1293 (La.App. 1 Cir.1977), writ denied, 353 So.2d 1035 (La.1978). Thus, the taxpayer must clearly demonstrate that they are entitled to tax relief.
The Department claims the trial judge’s conclusion is contrary to the jurisprudence of this state. The Department cites Mattingly v. Vial, 193 La. 1, 190 So. 313, 315 (1939), for the proposition that any plausible doubt is fatal to the Duhons’ claim for the inventory tax credit. The Department also asserts that LSA R.S. 47:6006(A)’s failure to identify the party entitled to the tax credit must be interpreted to allow only the party who remitted the taxes to the political subdivision to claim the credit.
Once again, we find no merit in the Department’s second assignment of error. Applying the principle that tax statutes must be strictly construed against the taxing authority to this case, we find that the failure of LSA-R.S. 47:6006(A) to limit entitlement to the tax credit to any particular person or group requires that the statute be interpreted to allow the party actually paying the tax to claim the credit, even if that party did not remit the tax to the political subdivision. Nothing in the statute limits the credit only to those taxpayers who wrote the payment check tendered to the tax collector.
^Entitlement to inventory tax credit
Third, the Department argues that by limiting the inventory tax credit to the taxpayer who actually remits the tax to the political subdivision, the Department can prevent taxpayers from improperly duplicating the inventory tax credit. According to the Department, if the Duhons’ interpretation of LSA-R.S. 47:6006(A) is used, both a seller and buyer could claim the tax credit without apportioning their share as per the purchase agreement. The Department claims that this would place an undue burden on it to check each return to make sure that the proportionate share of the inventory tax credit is being correctly taken.
However, the Department’s concerns are only speculative in this case, in which only one party-the party that the Department admits ultimately paid the tax-has claimed the credit. Moreover, this case involves no dispute over the amount of taxes due. The Department is not claiming that it is owed more money than it received, but merely that the wrong indi *1278 vidual received the ad valorem tax credit. Thus, we find no merit in the Department’s third assignment of error.
Finally, we note that the trial judge’s concern that “had the sale taken place in Jefferson Parish, the business would have paid the inventory tax at the end of the year and the Duhons would have been entitled to the credit.” We agree with the trial court’s reasoning that it would be unfair to put businesses or individuals in Orleans Parish at a disadvantage to those located in other parts of the State. Therefore, based on the facts and circumstances of this case the Duhons are entitled to claim the tax credit.
Accordingly, the trial court judgment is hereby affirmed.
AFFIRMED!