WICKER, J.
These consolidated cases arise out of a dispute involving the Alternative Fuel Tax Credit, wherein the Department of Revenue is appealing the Board of Tax Appeal's judgment overruling an Exception of No Right of Action and granting two refunds totaling $710,402, plus interest. For the following reasons, we affirm the Board of Tax Appeal's judgment.
Procedural Background
On August 2, 2016, petitioners, Glenn H. Woods and Jimmie M. Woods, each filed a Petition to Review Denial of Refund/Credit and Alternatively for a Claim Against the State. The petitioners, each fifty percent owners of Metro Service Group, Inc. (Metro), prayed that the Louisiana Board of Tax Appeals (the Board) determine that they have a refundable overpayment/credit in the amount of $344,661 each and that the Board order the Secretary of the Louisiana Department of Revenue (the Department) to pay the refunds to them with interest. The petitioners prayed, alternatively, that the Board award claims against the State to each of them in the amount of $344,661 of Louisiana individual income tax paid and recommend to the next session of the Legislature that these claims are approved and should be paid.
On January 31, 2017, the Department filed an Exception of Improper Cumulation of Actions and Answer in each case, responding, in part, that the Alternative Fuel Tax Credit/refund had already been issued to Metro. On May 1, 2017, the Department filed an Exception of No Right of Action, arguing, inter alia , that the petitioners did not have a right to claim this credit as the credit had been previously claimed and issued to another *412 taxpayer. On May 9, 2017, the Board conducted a hearing, taking the matter under advisement thereafter.
On November 7, 2017, the Board issued a written judgment, along with written Reasons for Judgment, overruling the Department's Exception of No Right of Action and granting the refund claims of Glenn H. Woods and Jimmie M. Woods in the amount of $355,201 to each of them, for a total of $710,402, with interest. The Department, thereafter, filed a Motion for Appeal in each case that was granted. These cases were ultimately transferred from the Fourth Circuit Court of Appeal to this Court based on the recusal of the Fourth Circuit Court of Appeal judges and were consolidated.
Statement of the Case
The petitioners, Glenn H. Woods and Jimmie M. Woods, are brothers who each own fifty percent of Metro, a waste hauling business operating as an S corporation.[1] The petitioners decided to convert to alternative fuel based on the Alternative Fuel Tax Credit (AFTC), a Louisiana tax incentive for businesses which convert their operations to run on compressed natural gas (CNG). Metro, thereafter, purchased twenty CNG-powered rear-loader waste hauling vehicles and constructed a CNG filling station to service the fleet. Metro originally claimed the credit in the amount of $1,044,524 on its 2012 Louisiana corporation income and franchise tax return for both the vehicles and an alternative fuel station. However, in a letter dated December 5, 2013, the Department denied $689,323 of the amount claimed and allowed the remainder of $355,201. Metro did not appeal the Department's partial denial of the credit.
On November 13, 2015, Metro filed an amended 2012 return, reducing the amount claimed from $1,044,524 to $355,201, which was the amount previously allowed. At the same time, the petitioners filed amended Louisiana individual income tax returns for the same period, each seeking a credit of $344,661, for a total of $689,322. In other words, Metro made an S corporation election to allow the credit to flow through to Metro's shareholders, the petitioners, in proportion to their ownership interests, and the petitioners then claimed the tax credit on their personal income tax returns. In letters to the petitioners dated June 8, 2016, the Department denied the refund/credit. The petitioners subsequently filed petitions asking the Board to review the denial of the refund/credit.
At the hearing on May 9, 2017, the Board severed the refund claim from the claim against the State, hearing the refund claim that day. The petitioners posited that they were entitled to the tax credit as they were within the three years for filing amended tax returns. The Department responded that the petitioners were not entitled to pass through the tax credit once the corporation failed to respond to the denial. In support of their position, the petitioners called Glenn Woods who testified that he invested approximately $7,000,000 in the CNG trucks and $1,300,000 in the fueling station, that they had to build a completely new fueling station, and that he was counting on receiving the tax credits to make it economically feasible. Mr. Woods explained that Entergy had to run new gas lines and electricity *413 to the new fueling station to make it all work, and that all of the components were necessary to make the project work.
The petitioners introduced exhibits at the hearing, including Joint Exhibit 1, the original 2012 Metro tax return; Joint Exhibit 2, the refund denial/reduction letter; Joint Exhibit 3, the amended 2012 Metro tax return; Joint Exhibit 4, the amended tax return for Glenn H. Woods; Joint Exhibit 5, the amended tax return for Jimmie M. Woods; Taxpayer Exhibit 6, the memo associated with invoices and costs; and Taxpayer Exhibit 7, the fueling station costs. The Department called no witnesses and introduced no evidence in support of its position. The Board took the matter under advisement, after which it rendered judgment and provided reasons.
On November 7, 2017, the Board overruled the Department's Exception of No Right of Action and granted the refund claims in the amount of $355,201 to each petitioner, with interest. With regard to La. R.S. 47:6035, the Board stated in pertinent part:
The Secretary[2] interprets the prefatory language in the first sentence of Subsection D, "where no previous credit has been claimed," as preclusive of Petitioners' claims because the credit was previously claimed by Metro. As an initial matter, Petitioners elected to claim the credit under Subsection C. Moreover, the Secretary's interpretation is not supported by the canons of statutory construction. Subsection D provides a means of calculating the appropriate amount of the credit in the event that the taxpayer elects not to claim the credit "pursuant to Subsection C ...." Under Subsection D, a taxpayer may claim the credit without determining the extra cost attributable to the subject property, but the amount of the credit is limited to "ten percent of the cost of the motor vehicle or three thousand dollars, whichever is less, provided the motor vehicle is registered in this state." On the other hand, a taxpayer who elects to claim the credit under Subsection C would be required to determine the cost of the qualified property, but would also be entitled to a more lucrative credit; "fifty percent of the cost of the qualified clean-burning motor vehicle fuel property." It would be illogical to permit the taxpayer to claim the fifty percent credit under Subsection C and then an additional ten percent credit under Subsection D. The purpose of the language quoted by the Secretary is to prevent the taxpayer from doing just that. Consequently, the Secretary's reliance on Subsection D is misplaced. (Footnote added).
The relevant provision of the statute for determining whether Petitioners have a right of action to claim the credit is found in Subsection A. Subsection A provides that the credit is available against income tax to any person or corporation purchasing qualifying property. Petitioners allege that they are entitled to claim the credit on their amended 2012 Louisiana individual income tax return because Metro purchased qualifying property during the 2012 tax period, was entitled to a claim [sic] the credit, and elected to pass the credit through to its shareholders. Considering the proper standard for an exception of no right of action, Petitioners fit within the class of persons that have a legal interest in the matter asserted.
*414 Accordingly, the Department's Exception of No Right of Action is overruled.
The Board also recognized that while Metro may be procedurally barred from litigating its own refund, Louisiana tax law provides for the type of flow-throughof credits utilized by these taxpayers and there is no apparent procedural bar to this refund action.
In its reasons, the Board also addressed whether the petitioners had demonstrated that the tax credit was applicable to the vehicles and the filling station. It found that under the 2012 tax period version of La. R.S. 47:6035, an individual or corporation was entitled to a refundable credit against the individual or corporate income tax equal to fifty percent of the "cost of the qualified clean-burning motor vehicle fuel property." The Board also found in pertinent part:
A taxpayer claiming a credit must clearly demonstrate its entitlement to relief. See Crawford v. Duhon , 2001-0193 (La. App. 4 Cir. 11/7/01), 799 So.2d 1273, 1277. Petitioners assert that the total cost of qualified clean-burning motor fuel property was $916,840 for the fleet of 20 vehicles, and for $1,172,189 for the filling station.[3] As described above, Petitioners have supported their assertions through testimony and documentary evidence introduced at trial. The Secretary does not challenge Petitioners' evidence but nevertheless argues that Petitioners have not established their entitlement to the credit. The Board can discern no articulable reason why Petitioners' evidence should be deemed insufficient. The Board accordingly finds, based on the evidence introduced at trial, that Petitioners are entitled to the credits claimed. (Footnote added).
For the reasons set forth above, the Department's Exception of No Right of Action is overruled, and the Petition for Refund and associated claims of Glenn H. Woods and Jimmie M. Woods are granted.
Analysis
On appeal, the Department raises three Assignments of Error:
1. The Board erred by failing to grant the Department's Exception of No Right of Action.
2. The Board erred by allowing the refund under the S-Corp exclusion.
3. The Board erred by not correctly calculating the refund.
The Department also presents the following as issues for review:
1. Whether the taxpayers have a right to claim the credit under La. R.S. 47:6035(B)(2)(c) ?
2. Whether the taxpayers have a right to claim the credit under La. R.S. 47:1625 ?
*415 3. Whether the taxpayers properly claimed the credit under La. R.S. 47:1675(G)(2)(B) ?
4. Whether the Board properly calculated the refund under La. R.S. 47:6035(B)(2)(c) and La. R.S. 47:6035(C) ?
Assignment of Error Number One
The Board erred by failing to grant the Department's Exception of No Right of Action.
Discussion
The Department argues that the Board erred by failing to grant its Exception of No Right of Action as petitioners do not belong to the class of persons to whom the law grants the Alternative Fuel Tax Credit. Appellants posit that the law grants the Alternative Fuel Tax Credit under La. R.S. 47:6035(B)(2)(c) only if "no credit has been previously claimed on the cost of such property," and in this case, Metro submitted a claim for the credit with the Department.
The Department argues that on December 5, 2013, it informed Metro of the partial granting and partial denial of the tax refund and that Metro did not appeal the partial denial within sixty days, the time allowed by law. The Department maintains that because no appeal was taken, the denied portion of the refund is final and unavailable and that any right by any taxpayer to that refund is extinguished. The Department asserts that the procedure for appealing a refund denial is set out in La. R.S. 47:1625(A)(1), which generally provides that no appeal may be filed after the expiration of sixty days from the date of mailing by the collector to the taxpayer of a notice of the disallowance of the claim. The Department contends that by allowing the petitioners to assert a claim for a prescribed refund, the Board has provided a method of circumvention of the rules of prescription.
The petitioners respond that they are clearly entitled to claim the credit under the Alternative Fuel Tax Credit as the Department's denial of Metro's original refund claim is not res judicata and has no preclusive effects on subsequent refund claims even if filed by the same taxpayer, as long as those refund claims are within the three-year prescriptive period. The petitioners argue that a Department denial of a portion of a taxpayer's refund claim is not "final," so as to preclude any re-filings of that refund claim, such as a re-filing made with additional documentation, and that the Department cannot arbitrarily cut off a taxpayer's right to file a refund claim brought within that three-year period simply by sending a letter pursuant to La. R.S. 47:1625 notifying a taxpayer that all or part of a refund claim has been denied.
The petitioners further contend that La. R.S. 47:1625 states that a taxpayer "may" appeal a denial of a refund claim, but that there is no requirement that a taxpayer appeal the denial or forever lose the right to make that claim. In support of this argument, petitioners point out that nowhere in the text of La. R.S. 47:1625 does the statute state or suggest that the Department's denial of a refund claim amounts to a "final" decision on the merits of that claim unless the taxpayer files an appeal with the Board. The petitioners maintain that for the law to provide such finality, it must say so expressly, citing by example the tax assessment procedure found in La. R.S. 47:1565, which they argue explicitly states that if the taxpayer does not appeal the assessment to the Board within sixty days, the assessment shall be final. They contend that La. R.S. 47:1625 addresses only the deadline for appealing a denial of a claim for refund or credit, not for the re-filing of another *416 claim. As such, they contend that taxpayers like themselves are free to file additional refund claims provided they do so within the three-year prescriptive period.
La. R.S. 47:1435(A) provides that, "[t]he courts of appeal shall have exclusive jurisdiction to review the decisions or judgments of the board, and the judgment of any such court shall be subject to further review in accordance with the law relating to civil matters." Upon such review, the courts shall have the power to affirm or, if the decision or judgment of the board is not in accordance with law or is manifestly erroneous on the facts considering the record as a whole, to modify, or to reverse the decision or judgment of the board, with or without remanding the case for further proceedings. See La. R.S. 47:1435(C).
In Int'l Paper, Inc. v. Bridges , 07-1151 (La. 1/16/08), 972 So.2d 1121, 1127-28, the Louisiana Supreme Court set forth the standard of review of a decision of the Board of Tax Appeals:
Judicial review of a decision of the Board is rendered upon the record as made up before the Board and is limited to facts on the record and questions of law. The Board's findings of fact should be accepted where there is substantial evidence in the record to support them and should not be set aside unless they are manifestly erroneous in view of the evidence on the entire record.
This Court has found that the standard of appellate review of a decision of the Board of Tax Appeals is the manifest error standard. Falco Lime, Inc. v. Kennedy , 99-189 (La. App. 5 Cir. 7/27/99), 739 So.2d 953, 955. Judicial review of a decision of the Board is rendered upon the record as made up before the Board. Id. A decision of the Board will not be reversed on appeal absent a finding that the Board: 1) failed to correctly apply the law and adhere to procedural standards; or 2) that the Board's conclusions from the evidence presented were arbitrary or constituted an abuse of discretion. Id.
The peremptory exception of no right of action functions as a test of whether the plaintiff has a real and actual interest in the action. La. C.C.P. art. 927. The determination of whether a plaintiff has a right of action is a question of law, which the appellate court reviews de novo . Khoobehi Props., LLC v. Baronne Dev. No. 2, L.L.C. , 16-506 (La. App. 5 Cir. 3/29/17), 216 So.3d 287, 296, writ denied , 17-0893 (La. 9/29/17), 227 So.3d 288. In examining an exception of no right of action, a court focuses on whether a plaintiff belongs to a particular class of persons to whom the law grants the cause of action asserted in the suit, and the court assumes that the petition states a valid cause of action. Louisiana Paddlewheels v. Louisiana Riverboat Gaming Com'n , 94-2015 (La. 11/30/94), 646 So.2d 885. Evidence supporting or controverting an exception of no right of action is admissible. La. C.C.P. art. 931. However, in the absence of evidence to the contrary, the averments of fact in the pleadings will be taken as true. Denoux v. Vessel Mgmt. Servs. , 07-2143 (La. 5/21/08), 983 So.2d 84, 88 ; State v. AstraZeneca AB , 16-1073, (La. App. 1 Cir. 4/11/18), 249 So.3d 38. Determination of whether a plaintiff has a right of action is a question of law. Id.
"Legislation is the solemn expression of the legislative will; thus, the interpretation of legislation is primarily the search for legislative intent." Dunn v. City of Kenner , 15-1175, p. 10 (La. 1/27/16), 187 So.3d 404, 409. See also La. R.S. 24:177(B)(1) ("The text of a law is the best evidence of legislative intent."). When a law is clear and unambiguous and its application does not lead to absurd consequences, *417 it shall be applied as written, with no further interpretation made in search of the legislative intent. La. C.C. art. 9 ; La. R.S. 1:4. The meaning and intent of a law must be determined by considering the law in its entirety and all other laws on the same subject matter and by placing a construction on the provision in question that is consistent with the express terms of the law and with the obvious intent of the legislature in enacting it. Allen v. Allen , 13-2778, p. 11 (La. 5/7/14), 145 So.3d 341, 346. Courts should give effect to all parts of a statute and, if possible, should not give a statute an interpretation that makes any part superfluous or meaningless. McLane S., Inc. v. Bridges , 11-1141, p. 10 (La. 1/24/12), 84 So.3d 479, 483. The language of the statute itself is the starting point for the interpretation of any statute. Dunn , 15-1175 at 10, 187 So.3d at 410.
In 2012, at the time the petitioners purchased the vehicles in question,[4] La. R.S. 47:6035 provided the law regarding tax credits for conversion of vehicles to alternative fuel usage in pertinent part as follows:
A. The intent of this Section is to provide an incentive to persons or corporations to invest in qualified clean-burning motor vehicle fuel property. Any person or corporation purchasing such property as specified in this Section shall be allowed a credit against income tax liability as determined pursuant to Subsection C of this Section.
B. As used in this Section, the following words and phrases shall have the meaning ascribed to them in this Subsection unless the context clearly indicates otherwise:
****
(2) "Cost of qualified clean-burning motor vehicle fuel property" shall mean any of the following:
(a) The retail cost paid by the owner of a motor vehicle for the purchase and installation by a technician of qualified clean-burning motor vehicle fuel property certified by the United States Environmental Protection Agency to modify a motor vehicle which is propelled by gasoline or diesel so that the motor vehicle may be propelled by an alternative fuel, provided the motor vehicle is registered in this state.
(b) The cost to the owner of a new motor vehicle purchased at retail originally equipped to be propelled by an alternative fuel for the cost of that portion of the motor vehicle which is attributable to the storage of the alternative fuel, the delivery of the alternative fuel to the engine of the motor vehicle, and the exhaust of gases from combustion of the alternative fuel, provided the motor vehicle is registered in this state.
(c) The cost of property which is directly related to the delivery of an alternative fuel into the fuel tank of motor vehicles propelled by alternative fuel, including compression equipment, storage tanks, and dispensing units for alternative fuel at the point where the fuel is delivered, provided the property is installed and located in this state and no credit has been previously claimed on the cost of such property. The cost of property which is directly related to the delivery of an alternative fuel into the fuel tank of motor vehicles propelled by alternative fuel shall not include costs *418 associated with exploration and development activities necessary for severing natural resources from the soil or ground. [Emphasis added].
(3) "Qualified clean-burning motor vehicle fuel property" shall mean equipment necessary for a motor vehicle to operate on an alternative fuel and shall not include equipment necessary for operation of a motor vehicle on gasoline or diesel.
C. The credit provided for in Subsection A of this Section shall be allowed against individual or corporate income tax for the taxable period in which the property is purchased and installed, if applicable, and shall be equal to fifty percent of the cost of the qualified clean-burning motor vehicle fuel property.
D. In cases where no previous credit has been claimed pursuant to Subsection C of this Section for the cost of qualified clean-burning motor vehicle fuel property in a new motor vehicle purchased by a taxpayer with qualified clean-burning motor vehicle fuel property installed by the vehicle's manufacturer and the taxpayer is unable to, or elects not to determine the exact cost which is attributable to such property, the taxpayer may claim a credit against individual or corporate income tax for the taxable period in which the motor vehicle is purchased equal to ten percent of the cost of the motor vehicle or three thousand dollars, whichever is less, provided the motor vehicle is registered in this state.
La. R.S. 47:6035.
La. R.S. 47:1625 provides the law regarding appeals from the disallowance of refund claims in pertinent part as follows:
A. (1) If the collector fails to act on a properly filed claim for refund or credit within one year from the date received by him or if the collector denies the claim in whole or in part, the taxpayer claiming such refund or credit may appeal to the Board of Tax Appeals for a hearing on the claim filed. No appeal may be filed before the expiration of one year from the date of filing such claim unless the collector renders a decision thereon within that time, nor after the expiration of sixty days from the date of mailing by registered mail by the collector to the taxpayer of a notice of the disallowance of the part of the claim to which such appeal relates.
La. R.S. 47:1625(A)(1).
In the instant case, we find that La. R.S. 47:6035(A) gives petitioners the right of action to claim the tax credit. The law is clear and unambiguous and its application does not lead to absurd consequences. La. C.C. art. 9 ; La. R.S. 1:4. La. R.S. 47:6035(A) provides that any person or corporation purchasing the property in question shall be allowed a credit against income tax liability pursuant to Subsection C. The corporation tried and failed to obtain the full tax credit. Because the corporation missed the sixty-day deadline, it appears that the corporation is procedurally barred from seeking the disallowed portion of the refund. However, there is no preclusive language in the statute that prohibits the petitioners from seeking the disallowed portion of the tax credit by filing amended individual income tax returns within the three-year prescriptive period for doing so. The statute does not state that only one entity can claim the tax credit nor does it state that if the S corporation's tax credit is disallowed then an individual cannot file a claim for the tax credit. La. R.S. 47:6035(B)(2)(c) provides that the statute is applicable if "no credit has been previously claimed on the cost of such property." The credit has not been previously claimed on the cost of the property by these petitioners in their personal income tax returns (prior to their amended *419 returns). The petitioners' claims are separate from the corporation's claim.
For the foregoing reasons, we find that the Board did not err in overruling the exception.
Assignment of Error Number Two
The Board erred by allowing the refund under the S-Corp exclusion.
Discussion
The Department argues that the Board erred by allowing the refund under the S corporation exclusion. It reiterates that the original return filed by Metro sought an Alternative Fuel Tax Credit in the amount of $1,044,524, that the Department verified $355,201 of that amount, that Metro failed to appeal the disallowed portion of the credit, and that it issued a partial refund in February of 2014. It also reiterates that two years later Metro filed an amended return reducing the amount of the credit from $1,044,524 to $355,201. The Department argues that Metro included with its amended return the statement that the return was being amended to make the election set forth in La. R.S. 47:1675(G)(2)(b). The Department also argues that Metro elected pursuant to that statute to flow through the entire amount of the credits earned for tax year 2012 under La. R.S. 47:6035 to the shareholders of the corporation.
The Department contends that this S corporation election fails for several reasons. It argues that Metro cannot flow through the entire amount of the credit because that amount has already been refunded by the Department. It also argues that Metro did not write a check to the Department to cover the refund that had already been issued, so that the $355,201 could be available to flow through. The Department submits that the statute requires that S corporation Metro flow through the entire amount of the credit, not just a portion, and that Metro asserted this contention in its statement but did not do so. It states that the petitioners admit that Metro is not passing through the entire amount of the credit, just the denied portion. The Department also states that the denied portion does not appear on the amended return, which it argues is clearly outside the scope of the statute. It argues that if Metro were allowed to flow through the credit to its shareholders, only $355,201 would be available for flow through, but it has already been refunded.
The Department asks that in the event this Court finds that the S corporation exclusion is applicable, this Court find that the Board has incorrectly calculated the amount of the credit and remand back to the Board for recalculation, if necessary.
The petitioners respond that Metro properly elected to pass through the credit to the taxpayers, pointing out that Metro originally claimed the credit in the amount of $1,044,524 pursuant to La. R.S. 47:6035 and the Department allowed $355,201 and disallowed $689,323. Metro then made the La. R.S. 47:1675(G)(2)(b) election to allow the unpaid amount of the credit to flow through to Metro's shareholders in an amount in proportion to their ownership interest. As fifty percent shareholders of Metro, each of them claimed half of the total credit sought by Metro on his amended 2012 individual income tax return - $522,262. They explain that since the State already allowed the partial refund in the amount of $355,201 instead of the $1,044,524 sought by Metro, the petitioners are only claiming $344,661 in this suit, fifty percent of the disallowed $689,323.
La. R.S. 47:1675(G)(2)(b) provides:
(b) Flow through election for S corporations. An S corporation that earns or otherwise receives a tax credit through allocation or transfer during a year in which the corporation operates as an S
*420 corporation may annually elect to flow through the entire amount of the credit to its shareholders. The election may be made for each credit received by the S corporation and shall be made annually. The election shall be in writing and may not be revoked. [Emphasis added].
La. R.S. 47:1675(G)(2)(b).
In the instant case, Metro filed an amended 2012 return, reducing the amount claimed from $1,044,524 to $355,201, which was the amount previously allowed. At the same time, the petitioners filed amended Louisiana individual income tax returns for the same period, each seeking a credit of $344,661, for a total of $689,322. Metro made the election under La. R.S. 47:1675(G)(2)(b) in writing to flow through the disallowed amount of the credit to Metro's shareholders, the petitioners, in an amount in proportion to their ownership interest - $344,661 each. Here, Metro did not flow through the entire amount of the credit, and it was not required to do so under the statute. The statute provides that the corporation "may" flow through the entire amount, not that it "must" do so. As such, we find that the Board did not err by allowing the refund under the S corporation exclusion.
Assignment of Error Number Three
The Board erred by not correctly calculating the refund.
Discussion
The Department argues that the Board erred by not correctly calculating the amount of the Alternative Fuel Tax Credit/refund. It also argues that the Board has allowed items not considered clean-burning alternative motor vehicle fuel property by statute. The Department contends that the Legislature has provided an Alternative Fuel Tax Credit under La. R.S. 47:6035, for the cost of property which is directly related to the delivery of an alternative fuel into the fuel tank of motor vehicles propelled by alternative fuel, including compression equipment, storage tanks, and dispensing units for alternative fuel at the point where the fuel is delivered.
The Department states that the petitioners each submitted a document from Vocational Energy CNG Fuel Stations that includes a Schedule of Values and CNG Project Breakdown of Capital Cases. It contends that a review of the breakdown shows that an overwhelming amount allowed by the Board is not property directly related to delivery of the alternative fuel at the point where the fuel is delivered, citing the Board's allowance of money for design plans and permits ($39,825); communication package ($3,355); concrete, guardrail, bollards, excavation, trenching, and backfill ($107,142); high and low pressure piping, installation, testing, and trenching (($68,805); electrical, meter main, transformer tie in, and materials ($98,413); project management and onsite foreman ($41,175); training and testing ($11,475); freight charges ($12,000); and taxes ($55,351).
The Department argues that the burden of proof rested with the petitioners to show how each of the aforementioned items qualified under the statute and that they failed to carry that burden at the hearing. It also argues that the petitioners simply introduced the documents into the record without any explanation as to how they fit under the statute. The Department maintains that Mr. Woods testified that without any of those things the fueling station would not exist; however, it contends that the statute did not address contracts as a whole. It also maintains that Mr. Woods noted he was just a layman and that Vocational and McNeilus were the specialists. Nevertheless, the Department submits that no one from those companies was there to testify regarding how each item was directly related to the delivery of *421 the natural gas at the point of delivery. The Department argues that for the Board to completely disregard the statute and award the entire amount, including items that have nothing to do with delivering the natural gas from the pump to the vehicle is reversible error, and the judgment should be vacated and/or reduced according to the statute.
The Department further contends that the Board failed to apply the Legislative reduction from fifty percent to thirty-six percent of the cost of the clean-burning property. It asserts that beginning July 1, 2015, the Louisiana Legislature reduced the amount of the qualified clean-burning motor vehicle fuel property from fifty percent to thirty-six percent and that the Legislature made this reduction applicable to a claim for a credit on any return filed on or after July 1, 2015 but before June 30, 2018, regardless of the taxable year to which the return relates. The Department notes that the amended return filed by Metro has a signature date of November 10, 2015 and that the amended returns filed by the petitioners have a signature date of November 12, 2015. It contends that since all three amended returns were filed after July 1, 2015, they are subject to the Legislative reduction from fifty percent to thirty-six percent of the cost of the clean-burning motor fuel property, which includes the fueling station and the vehicles. The Department, therefore, argues that because the Board failed to apply the Legislative reduction, this Court should apply the reduction itself, or at least remand the matter back to the Board for it to make the reduction and correctly calculate the amount of the credit.
The petitioners respond that the Department did not raise these arguments nor introduce any evidence at the hearing to controvert the types of property or value thereof which entitled them to a credit under the Alternative Fuel Tax Credit. They further respond that by contrast, they introduced various exhibits and offered sufficient testimony to support their claims for credits under the Alternative Fuel Tax Credit. Therefore, the petitioners argue that this Court should not consider these arguments because "issues not raised in the trial court will not be given consideration for the first time on appeal." The petitioners contend that this is consistent with this Court's standard of review, which they explain is rendered upon the record made before the Board and is limited to the facts on the record.
The Department replies that its cross-examination of Mr. Woods was prima facie proof that it was contesting the amount of the credit sought by petitioners. It further replies that the dialogue between the Department's counsel and the witness clearly shows that the Department is challenging the amount of the credit and what items the statute allows.
The Louisiana Legislature has provided three definitions of the "Costs of qualified clean-burning motor vehicle fuel property." The petitioners rely upon the definition found in La. R.S. 47:6035(B)(2)(c) as follows:
(c) The cost of property which is directly related to the delivery of an alternative fuel into the fuel tank of motor vehicles propelled by alternative fuel, including compression equipment, storage tanks, and dispensing units for alternative fuel at the point where the fuel is delivered, provided the property is installed and located in this state and no credit has been previously claimed on the cost of such property. The cost of property which is directly related to the delivery of an alternative fuel into the fuel tank of motor vehicles propelled by alternative fuel shall not include costs associated with exploration and development *422 activities necessary for severing natural resources from the soil or ground. [Emphasis added].
At the hearing during Glenn Woods' testimony, petitioners introduced into evidence a Schedule of Values from Vocational Energy which details the costs of the fueling station. These costs include, but are not limited to, engineering designs, plans and permits; equipment such as compressors, a dryer, fuel posts and hoses; civil work; high and low pressure piping, installation, testing, and trenching; electrical and conduit; project management; start up and commissioning/maintenance training; freight; and taxes, for a total of $1,172,189.
Glenn Woods explained that they hired Vocational Energy to build a completely new fueling station for the CNG vehicles, which was mainly composed of two generators and a drier that were tapped into a gas line that Entergy provided to Metro. He testified that if he had not paid for all of the costs of the fueling station as set forth above, he would not have a CNG station and that all of the components were necessary to make the project work. The Department called no witnesses and produced no documentation to counter Glenn Woods' testimony and supporting documentation.
In light of the foregoing, we find that since the Department failed to object at trial to the memos regarding the costs in question, the argument raised on appeal that the writers of those memos did not testify at trial is waived, and we may consider those memos. We also find that the Department challenged the calculation of the tax credit at trial during the cross-examination of Mr. Woods, and therefore, we can consider the Department's argument regarding that issue on appeal. We further find that the cost of property as detailed above is directly related to the delivery of an alternative fuel into the fuel tank of motor vehicles propelled by alternative fuel pursuant to La. R.S. 47:6035(B)(2)(c). The statute is clear and unambiguous, and its application does not lead to absurd consequences. The Schedule of Values does not list extraneous property, such as a grocery store or a car wash attached to the fueling station. It lists only the items and costs necessary for the fueling station. As such, we find that the Board properly allowed all of the costs of the fueling station.
The Department also argues that the Board failed to apply the Legislative reduction from fifty percent to thirty-six percent of the cost of the clean-burning motor vehicle fuel property. La. R.S. 47:6035 was amended by Acts 2015, No. 125, § 2, effective July 1, 2015, wherein thirty-six percent was substituted for fifty percent in La. R.S. 47:6035(C)(1).
Effective July 1, 2015, La. R.S. 47:6035(C)(1) provided:
The credit provided for in Subsection A of this Section shall be allowed against individual or corporate income tax for the taxable period in which the property is purchased and installed, if applicable, and shall be equal to thirty-six percent of the cost of the qualified clean-burning motor vehicle fuel property. [Emphasis added].
See La. R.S. 47:6035(C)(1).[5]
The Section 7 comments provide as follows:
(A) Except as provided for in Subsection (B) of this Section, the provisions of Sections 1, 2, and 3 of this Act shall apply to a claim for a credit on any *423 return filed on or after July 1, 2015, but before June 30, 2018, regardless of the taxable year to which the return relates.
(B) The provisions of Sections 1, 2, and 3 of this Act shall not apply to an amended return filed on or after July 1, 2015, but before June 30, 2018, relating to a credit properly claimed on an original return filed prior to July 1, 2015.
(C) If a return is filed after July 1, 2015, but before June 30, 2018, for which a valid filing extension has been allowed prior to July 1, 2015, then any portion of the credit reduced by the provisions of Sections 1, 2, or 3 of this Act shall be allowed as a credit in the amount of one-third of the reduced portion of the credit on the taxpayer's return for each of the taxable years beginning during calendar years 2017, 2018, and 2019.
The Section 8 comments provide as follows:
The provisions of Sections 1, 2, and 3 of this Act shall become effective on July 1, 2015 and shall remain effective through June 30, 2018. The provisions of Sections 4, 5, and 6 of this Act shall become effective on July 1, 2018 and shall apply to original returns filed on or after July 1, 2018.
The Department argues that the petitioners fall under the Section 7(A) comments, which provide in pertinent part that except as provided for in (B), Section 2 of this Act shall apply to a claim for a credit on any return filed on or after July 1, 2015, but before June 30, 2018, regardless of the taxable year to which the return relates. The amended returns of Glenn Woods and Jimmie Woods were signed on November 12, 2015. As such, the Department contends that the petitioners are only entitled to thirty-six percent of the costs in question.
Nevertheless, Metro falls under the Section 7(B) comments which provide in pertinent part that the provision of Section 2 of this Act shall not apply to an amended return filed on or after July 1, 2015, but before June 30, 2018, relating to a credit properly claimed on an original return filed prior to July 1, 2015. The amended return of Metro was filed on November 10, 2015. Metro's amended return relates to a credit properly claimed on an original return filed prior to July 1, 2015. Therefore, the fifty percent figure applies to Metro, an S corporation.
The S corporation's tax credit was granted in part and denied in part. The S corporation allowed the sixty-day appeal deadline to pass. It then elected to pass through the disallowed portion of the tax credit to its two shareholders on their individual tax returns on a proportional basis. The Board found that the S corporation was allowed to pass through the tax credits. We find that the Board's ruling was not manifestly erroneous. The clear wording of La. R.S. 47:1675(G)(2)(b) is that an S corporation can pass through some or all of the tax credit to its shareholders. Since the S corporation was entitled to fifty percent of the costs in question, that amount passed through to the individuals. Furthermore, the Department conceded at the hearing that the petitioners were entitled to fifty percent of the cost if they could prove their case. In light of the foregoing, we find that the Board did not err in calculating the amount of the tax credit.
DECREE
For the foregoing reasons, we affirm the judgment of the Board of Tax Appeals.
AFFIRMED

S corporations are defined by the IRS as corporations that elect to pass corporate income, losses, deductions, and credits through to their shareholders for federal tax purposes. Shareholders of S corporations report the flow-through of income and losses on their personal tax returns and are assessed taxes at their individual income tax rates. Vedros v. Vedros , 16-735 (La. App. 5 Cir. 10/25/17), 229 So.3d 677, 691, writs denied , 18-0004 (La. 2/23/18), 237 So.3d 520 and 17-2119 (La. 2/23/18), 237 So.3d 1185.

The Board refers to the Louisiana Department of Revenue as the "Secretary" and as the "Department."

The Board referred to a memorandum written by the vendor of the vehicles in question detailing the difference in cost between CNG propelled and diesel propelled rear loader waste vehicles. It also mentioned that the petitioners introduced twenty invoices evidencing the purchase of the vehicles in question. The Board found that the evidence proved that the alleged cost of equipment attributable to the exhaust gases from the combustion of the CNG vehicles is $10,482 per vehicle, and the cost of the equipment attributable to the storage and delivery of the alternative fuel is $35,360 per vehicle. Thus, the Board found that the asserted cost of qualified clean-burning motor fuel property is $45,842 per vehicle for a total of $916,840 for the entire fleet of twenty vehicles. The Board also referred to a Schedule of Values from Vocational Energy detailing the $1,172,189 price Metro paid for the CNG filling station, as well as four invoices evidencing the payment of that amount, all introduced by the petitioners at the hearing.

As was noted by the Board in its judgment, the applicable version of La. R.S. 47:6035 is the one that existed when the petitioners purchased the vehicles in question. See Barfield v. Bolotte , 15-0847 (La. App. 1 Cir. 12/23/15), 185 So.3d 781, 786, writ denied , 16-0307 (La. 5/13/16), 191 So.3d 1058. See also La. R.S. 47:6035(C) ("The credit ... shall be allowed ... for the taxable period in which the property is purchased[.]")

However, it is noted that the statute was amended again wherein thirty percent was substituted for thirty-six percent. La. Acts 2017, No. 325, § 1, effective June 22, 2017.